HAIGH v. EDELMEYER & MORGAN HOD ELEVATOR CO.

(Supreme Court, Appellate Division, First Department. January 10, 1908.)

1. APPEAL—REVIEW—QUESTIONS OF FACT—CONFLICTING EVIDENCE.
     Where the jury on conflicting evidence found for plaintiff, plaintiff's version will be accepted on appeal.

     [Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 3935–3937.]

**2. NEGLIGENCE—PERSONS LIABLE—LIABILITY OF ONE RENTING MACHINERY.**

> An owner of a hod hoisting elevator who rented the same to a contractor was only bound to see that the elevator, when installed, was safe, and, when called on from time to time, to shift the headpiece from one floor to another to inspect it, and beyond that the owner was under no obligation to inspect or repair unless called on to do so.

**3. SAME—EVIDENCE—RES IPSA LOQUITUR.**

> The mere fact that the headpiece of a hod hoisting elevator broke is not evidence that the headpiece was defective or unsafe when installed.
>
> [Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, §§ 217–224.]

**4. SAME.**

> That three years after the accident defendant was unable to comply with plaintiff's demand that the pieces of the broken headpiece of a hod hoisting elevator be produced on the trial does not warrant the inference that the headpiece was defective or unsafe when installed.

Appeal from Trial Term.

Action by Hartley A. Haigh against the Edelmeyer & Morgan Hod Elevator Company. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed, and a new trial ordered.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAMBERT, SCOTT, and HOUGHTON, JJ.

Frank V. Johnson, for appellant.
Carlisle Norwood, for respondent.

SCOTT, J. The plaintiff has recovered a judgment for the damages resulting from serious injuries caused by the falling of a hod elevator owned by defendant. From this judgment the defendant appeals.

The plaintiff was a foreman in the employ of a firm of masonry contractors engaged in erecting two buildings in the city of New York. These contractors rented from defendant a hod hoisting elevator, which was used to carry bricks, mortar, and other material to the several floors of the building. The elevator was so constructed that it could be used to carry either hods or wheelbarrows. When the accident had occurred it had brought two wheelbarrows to the fourth floor of one of the buildings. It was contended by defendant that plaintiff was riding on the elevator when it fell. The plaintiff denied this, and, since the jury on conflicting evidence has necessarily found in plaintiff's favor upon this issue, we accept his version, which was that while the elevator was at rest he undertook to take one of the wheelbarrows off the elevator, standing for that purpose with one foot on the platform of the elevator, and the other on the floor of the building, when suddenly the elevator fell to the bottom of the building, carrying him with it. The elevator was raised and lowered by a cable which ran to what is termed a "headpiece," carrying a wheel over which the cable ran, thence to another wheel at the end of the headpiece, and thence down through the building and out to the street, where it was operated by a stationary engine. The immediate cause of the fall of the elevator was the breaking of the headpiece. What caused it to break does not appear. It was constructed of two planks about nine inches wide and two inches thick, held apart by separators and firmly bolted together. The wheel over which the cable ran

was between these planks resting upon them. There was no evidence as to any agreement between the contractors and defendant as to whose duty it should be to inspect the elevator while under hire by the contractors. When a hod-hoisting elevator was hired, it was the custom of defendants to install it in the building, leaving it to be used, operated, and handled by the contractors to whom it was leased, and his employés. The defendants had nothing more to do with it, except that, as the building progressed, they would upon notice send their riggers to shift the headpiece up to another story, and put in additional lengths of guides for the elevator to run upon. This particular elevator had been in the building for some weeks, and there was evidence that at times it had been used to carry excessive weights above its designed capacity. There is no evidence that the headpiece which broke was improperly constructed, or that its material was defective, or that there were any apparent defects either in the headpiece or other parts of the machine. The principal question in the case was as to the measure of the defendant's obligation.

Were they bound only to see that the elevator when installed was of proper material and properly installed, or were they charged with the duty of continuous care and inspection? The court in its charge did not attempt to instruct the jury specifically upon this point, saying only that it was the duty of the defendant to exercise reasonable care and precaution to see that the elevator and the apparatus connected therewith were reasonably safe for the uses for which it was furnished. Further than this the court did not define the limits of the defendant's duty and responsibility. The defendant requested the court to charge that the plaintiff had no cause of action against the defendant, unless the jury found from the evidence that the headpiece which broke and caused the accident was defective and improperly constructed when it was last placed and installed in position by the defendant herein, and that the accident is directly attributable thereto. The court declined to so charge, and the defendant duly excepted. In our opinion the request was a proper one, and it was error to refuse it. Under the agreement between the contractors by whom plaintiff was employed, there was nothing, so far as appears, which required the defendants to keep the elevator and its several parts in repair, or to keep it under inspection for the purpose of discovering defects which might develop by reason of its use. A case presenting a very similar question came before the Court of Appeals in King v. N. Y. C. & H. R. R. R. Co., 66 N. Y. 181, 23 Am. Rep. 37. The defendant in that case owned a derrick which was placed on a dock and used for transferring rails from boats to cars. It made a contract with one Dillon, by which the latter agreed to unload from barges and vessels, and place upon cars all rails belonging to defendant which might arrive during a certain period. Dillon was to have the use of defendant's derrick. There was a dispute as to who was to keep the derrick in repair; plaintiff claiming that defendant had agreed to do so, and defendant claiming that its agreement was that it should make repairs when it was notified by Dillon that they were necessary. It did not appear that the derrick was not in good repair when the contract was made. In time, the hook supporting the gaff or boom and the tackle

of the derrick became worn, and broke while transferring a rail, falling upon plaintiff and causing the injuries complained of. The court had charged the jury, in effect, that it was the duty of the railroad company not only to see to it that the derrick was suitable and proper when furnished to Dillon, but also to keep it in order while it was in use by Dillon under his contract. An exception to this instruction brought before the Court of Appeals the very question presented by the request to charge in the present case, which is quoted above and which was refused by the trial judge. The Court of Appeals, speaking through Judge Andrews, held that the jury had been erroneously instructed; that, in the absence of any contract on the defendant's part to keep the derrick in repair, it had performed its full duty when it furnished a derrick suitable and safe at the time for use, and that as a general proposition the owner of an implement or piece of machinery may lawfully allow another to take and use it, and if, in using, it becomes defective and causes injury to a third person, the owner is not liable. The same principle, as we consider, governs the present case. It was undoubtedly the defendant's duty in the first instance to furnish an elevator which was safe and suitable for the uses to which it was to be put, and we think that, when it was called upon from time to time to shift the headpiece from one floor to another, it was its duty to inspect it to see whether or not it continued to be a safe and proper appliance to use. Beyond this, in the absence of a special agreement, it was under no obligation to inspect or repair unless called upon to do so. The defendant was entitled to have the jury properly instructed as to the extent of its obligations, and the failure to so instruct it requires a reversal of the judgment. There was no evidence that the headpiece was defective or unsafe when installed. Certainly the mere fact that it broke was not such evidence (Dougherty v. Milliken, 163 N. Y. 527, 57 N. E. 757, 79 Am. St. Rep. 608; Duhue v. Hamburg American Packet Company, 184 N. Y. 404, 77 N. E. 386, 112 Am. St. Rep. 615), nor can any inference to that effect be drawn from the fact that three years after the accident the defendant was unable to comply with plaintiff's demand that the pieces of the broken headpiece should be produced upon the trial. The plaintiff's counsel repeatedly and persistently, without rebuke from the court, brought before the jury the fact that the defense was being conducted by an insurance company. This fact was not relevant to any issue in the case, and could have been emphasized for no other purpose than to give plaintiff an unfair advantage before the jury. This practice has been repeatedly condemned by this court and the Court of Appeals, and in the present case was carried to an extent which would have necessitated a reversal of the judgment, even if the record had presented no other reversible error.

Judgment and order reversed, and a new trial granted, with costs to appellant to abide the event. All concur. PATTERSON, P. J., in result.