470 P.2d 905 (1970)
Gordon V. PETERSON and the Pacific Employers Insurance Company, Plaintiffs in Error,
v.
NEVADA MOTOR RENTALS, INC., a Nevada corporation, and W. J. Digby, an individual, Defendants in Error.
No. 70-031. (Supreme Court No. 22736.)
Colorado Court of Appeals, Div. I.
March 17, 1970.
*906 Myrick, Criswell & Branney, Englewood, for plaintiffs in error.
Albert B. Dawkins, Denver, for defendants in error.
Selected for Official Publication.
PIERCE, Judge.
This case was originally filed in the Supreme Court of the State of Colorado, and was subsequently transferred to the Court of Appeals under authority vested in the Supreme Court.
Plaintiffs in error were plaintiffs below; defendants in error were defendants below. Plaintiff, Gordon V. Peterson, will hereinafter be referred to as Peterson; defendant, Nevada Motor Rentals, Inc., will be referred to as Nevada; defendant, W. J. Digby, will be referred to as Bill Digby; and W. J. Digby, Inc., which is not a party to this action, will be referred to by that corporate name or as the Company.
On January 6, 1960, Gordon V. Peterson, an employee of W. J. Digby, Inc., was injured in an accident involving a tractor-trailer unit owned by Nevada, and leased to W. J. Digby, Inc., sometime around 1957. We are not informed as to the exact date on which W. J. Digby, Inc., became the bailee of this particular unit. Peterson and another driver named Nicklan had driven the fully-loaded unit from Colorado to Arizona. On their return trip to Denver, after having delivered their original cargo and subsequently obtaining a 30,000 lb. cargo to haul back to Denver, the "short line drive" (the drive shaft linking the first and second drive axles of the tractor) dropped out of the tractor, severing an air hose and rendering the brakes on the first and second drive axles inoperative. Peterson and Nicklan, after safely stopping and inspecting the vehicle, then proceeded some 25 miles to Prescott, Arizona, where they "pulled" the second drive axle to avoid damage to the differential on that axle from freewheeling. Thereafter, and without repairs to the brake hose itself, they drove approximately 90 miles to Flagstaff, Arizona, where Peterson called W. J. Digby, Inc., in Denver, to obtain authority (required, Peterson claimed, by company policy) to make repairs. He talked to James Digby, the President of the Company, who referred him to one John Buckhold, who was apparently the shop foreman for all equipment operated by W. J. Digby, Inc., although the evidence did not establish conclusively who actually employed him. Buckhold authorized Peterson to plug the broken air line, only, in order to stop air leakage. This repair, although returning brakes to the first drive axle of the tractor, did not cure the lack of brakes on the second drive axle.
After plugging the air line, Peterson and Nicklan resumed their return trip to Denver. They proceeded from Flagstaff, across Arizona and through New Mexico, crossing into Colorado by way of Raton Pass. Nicklan was driving when they came down *907 the Colorado side of Raton Pass; Peterson was sleeping. At a point south of Trinidad, Colorado, while still on Raton Pass, the accident occurred. Peterson awoke as the tractor-trailer unit was in mid-air, overturning down a precipice at the edge of the road. When the vehicle had come to rest, Peterson immediately asked Nicklan what had happened, and testified at trial that Nicklan told him. "I lost it coming down the hill; didn't have enough brakes to hold it."
As a result of this accident, Peterson was severely injured. He subsequently collected a workmen's compensation claim from W. J. Digby, Inc., through its insurance carrier, which, in turn, became a plaintiff-subrogee in this action.
The record shows that prior to 1959, Bill Digby was the principal stockholder of W. J. Digby, Inc., which he sold on January 1, 1959, to his son, James Digby, in exchange for a promissory note. James took over the operation of the Company and, at least, made interest payments on that note. The evidence indicates that Bill Digby did not remain in the employ of the Company, and that he drew no salary after the sale. He did, however, have some contact with the operation of the Company in that drivers hired by the Company were ordered to report breakdowns or other troubles either to Bill Digby or to his son, James; and Bill, from time to time, did direct corporate employees' work, and on at least one occasion meted out punishment to an errant driver. There are other indications in the record that he was consulted about company policy and exercised some degree of control over Company matters. The record also shows that Bill Digby was the majority stockholder of the defendant, Nevada, whose principal business was to lease tractor-trailer units to W. J. Digby, Inc.
The instant action does not involve an attempt to recover from W. J. Digby, Inc. on grounds of negligence, since Peterson is precluded from recovering on grounds of negligence, because he elected to take a workmen's compensation claim against that Company. He attempts to recover from defendant Bill Digby on grounds that Bill is liable to him under common law negligence theory; and to recover from Nevada Motor Rentals, Inc., on grounds of implied warranty of fitness for purpose, or in the alternative, strict liability in tort, in that, he alleges, the subject tractor-trailer unit was defective; and such defect was the proximate cause of his jury. These allegations were contained in plaintiffs' fourth amended complaint. The defendants answered by filing a general denial, and by setting up defenses of unavoidable accident, contributory negligence, assumption of risk, and negligence of persons other than parties to this action.
At the close of plaintiffs' case, defendants moved for a directed verdict which was granted. The plaintiffs appeal from this ruling.
Plaintiffs assign as error the trial court's finding of no agency between Bill Digby and W. J. Digby, Inc.; and the finding that Bill Digby could not be held liable in negligence. They further assign as error the trial court's finding that there was no actionable breach of implied warranty on the part of defendant Nevada Motor Rentals, Inc.
DID THE TRIAL COURT ERR IN DIRECTING A VERDICT IN FAVOR OF BILL DIGBY AND TAKING THE ISSUE OF HIS ALLEGED NEGLIGENCE AWAY FROM THE JURY'S DETERMINATION?
Our answer is no. The only possible negligence involved in this action would be the instructions for limited repairs given by Buckhold to Peterson. It may have been that the accident could have been avoided if complete repairs had been made. However, there is insufficient evidence in the record to lead any jury to conclude that Buckhold was an employee of either Nevada or Bill Digby, as an individual, and that, therefore, Digby should be liable under imputed negligence; nor is there any evidence at all to show that Bill *908 had any knowledge of the difficulties experienced by Peterson in Arizona. Neither would the mere fact that Nevada leased the equipment make Bill liable, even if the corporate veil could be pierced to reach him. Nevada was a bailor and there was absolutely no evidence that there was any defect in the vehicle caused by negligence at the time of the bailment. The bailor is not liable (under any negligence theory) for defects arising subsequent to delivery to a bailee either to the bailee or to an employee of a bailee. Skelly Oil Co. v. Darling, Okl., 375 P.2d 917; Haigh v. Edelmeyer and Morgan Hod Elevator Co., 121 N.Y.S. 134, 136 App.Div. 484; 107 N.Y.S. 936, 123 App.Div. 376.
The plaintiff argues, however, that because Bill Digby held certain incidents of control over W. J. Digby, Inc., that the latter was actually his agent, and that since Buckhold was an employee of the Company, the alleged negligence of Buckhold should be imputed through the Company to Bill. We are not convinced by this argument. The most that the evidence showed was that Bill may have been an agent of the Company; and under these conditions, if Bill was not guilty of negligence of any kind, himself, Peterson's workmen's compensation claim against the Company was the only avenue of recovery available to him.
We rule that no reasonable jury could conclude from the evidence presented that Bill Digby could be considered negligent directly or by imputation, and, therefore, be held personally liable in damages to Peterson. We find no error in the trial court's direction of verdict in this regard.
DID THE TRIAL COURT ERR IN DIRECTING A VERDICT IN FAVOR OF NEVADA MOTOR RENTALS, INC., THEREBY TAKING THE ISSUE OF ITS ALLEGED BREACH OF WARRANTY, OR STRICT LIABILITY IN TORT, AWAY FROM THE JURY'S DETERMINATION?
Our answer is again no. Assuming that the doctrines of implied warranty and strict liability might be available to the plaintiff in this state under the proper fact situation, the necessary element of proximate causation is absent in the case before us.
If the incident with the "short line drive" is claimed to be the defect in the tractor-trailer, there is no showing of why it dropped out, or that the drive shaft was defective. Nor is there any proof that if, indeed, the "short line drive" made the subject tractor-trailer defective, Nevada knew or should have known of this at the time of bailment, which could have been as long as three years prior. Nor do we find any showing of the required proximate causal relationship between the incident with the "short line drive" and the accident some 24 hours and several hundred miles later (unless we are to stretch proximate cause to the breaking point). If the brakes are considered to be the defect in the tractor-trailer, there is evidence showing only that they became defective as long as three years after the initial time of bailment (one day before the accident); there is no evidence in the record showing that they were in any way defective at the time of bailment. Nor is there any evidence showing that defendant Nevada knew, or should have known, of this "defect," since only employees of W. J. Digby, Inc., were informed (namely, James Digby, its President, and John Buckhold, who were in no way shown to be employees of Nevada Motor Rentals, Inc., and who were in fact shown by Peterson himself, to be employees of W. J. Digby, Inc.)
The rule with regard to direction of verdicts, upon request by the defendant, is that evidence must be considered in the light most favorable to the plaintiff, and that when so considered, if reasonable minds could draw but one conclusion from facts not in dispute, and that conclusion is against the plaintiff, the directed verdict may be granted. Richardson v. Pioneer Construction Co., 164 Colo. 270, 434 P.2d 403; Bates v. Stagg, 157 Colo. 456, 404 P. 2d 530; Hansen v. Dillon, 156 Colo. 396, 400 P.2d 201. Under the instant circumstances, *909 there is no dispute as to the facts surrounding the accident; and no reasonable mind could find a "defect" proximately resulting in plaintiff's injuries and actionable under either the theory of implied warranty, or the theory of strict liability in tort, from evidence put on by plaintiff.
We find, therefore, no error in the trial court's direction of verdict in this regard.
In light of our determination on plaintiffs' first two assignments of error, their third assignment with regard to unavailability of contributory negligence and assumption of risk as defenses to an action in breach of warranty, or strict liability in tort, becomes moot.
The judgment is affirmed.
SILVERSTEIN, C. J., and COYTE, J., concur.