**Walter J. CHAVIS, Jr., Appellant,**

v.

**COMMERCIAL STORAGE, INC.,
a corporation, Appellee.**

**No. 7040.**

District of Columbia Court of Appeals.

Argued Sept. 26, 1973.

Decided Aug. 26, 1974.

Thomas O. Mann, Washington, D. C., for appellant.

Edward J. Gorman, Jr., Washington, D. C., for appellee.

Before KELLY, GALLAGHER and YEAGLEY, Associate Judges.

KELLY, Associate Judge:

This appeal is from an order of the trial court granting the motion of appellee (de-

fendant) for a judgment notwithstanding the verdict returned by the jury in a negligence action and, should that order be set aside on appeal, granting an alternative motion for a new trial. The court declined to order a remittitur of the verdict.

Appellant filed suit in Superior Court to recover damages for personal injuries sustained in an automobile accident, charging appellee with negligence in the maintenance of a truck which appellant was driving at the time of the accident. The testimony in chief was that on a day early in November of 1971 appellant, an employee of Staff Builders, Inc., was transporting a group of fellow employees to a job site near Bowie, Maryland, in a small van-type truck leased to his employer by appellee Commercial Storage, Inc. He had driven that route earlier that morning in his own car and was familiar with the road. This time when appellant applied the brakes at the turnoff on Route 50 to Route 301 the left front brake pulled, moving the truck about a foot to the left and causing it to hit the curb and flip over. Appellant estimated that he had been driving the truck for 30 to 45 minutes over a distance of about 5 miles and said that he had noticed a slight pulling of the brakes to the left whenever they were applied. He made a pedal adjustment to compensate for the pull when braking. Appellant also testified that he had driven this same truck before and that on each occasion the condition of the brakes had been about the same.

Appellee moved for a directed verdict at the close of appellant's case. In the memorandum opinion granting judgment n. o. v.

the trial judge explained that while he had believed the motion was meritorious he had nevertheless reserved decision thereon in conformance with the practice suggested in a number of appellate decisions despite a feeling that to do so was a disservice to the defense.[1]

In defense, appellee called witnesses from Staff Builders and Commercial Storage.[2] It was established that under the lease agreement it was appellee's duty to maintain, service and repair the vehicles it leased to Staff Builders. There was testimony that the truck in question had been serviced in September, a little over a month before the accident, and the brakes repaired. It was serviced again in October. No one from either firm who had worked on the repairs or had driven the truck thereafter noticed anything wrong with the brakes. To the contrary, the testimony was that the brakes were at all times in good working order.[3] No complaints were ever received by either company concerning a possible defect in the brake system.

Curiously, the defense also put on expert testimony that an examination of the truck some three months after the accident disclosed the existence of grease or a greasy substance on the left front brake shoe that would, in the expert's opinion, affect the brake system by causing the truck to pull to the left when the brakes were applied. The expert testified that the greasy substance had been there for a minimum of 30 days before the accident and that the effect it had on the brakes would be felt by anyone driving the vehicle.

1. The court cited Law v. Virginia Stage Lines, Inc., 144 U.S.App.D.C. 115, 444 F. 2d 990 (1971), and cases cited in footnote 1 therein. Seganish v. District of Columbia Safeway Stores, Inc., 132 U.S.App.D.C. 117, 406 F.2d 653 (1968), specifically urges that this procedure be followed even when the motion is made at the close of plaintiff's case.

2. The investigating officer also took the stand and testified that he was told at the scene that appellant "realized when he was right

up on the exist that he had reached his exist and in an attempt to turn off, he wasn't able to make the turn. He hit the curb abutment and turned the vehicle over." [Tr. at 137.] The jury apparently did not credit this version of the accident.

3. The mechanic who repaired the brakes in September testified he had road tested the truck and had found nothing wrong with the brakes.

At the close of all the evidence appellee again moved for a directed verdict and again decision was reserved. It was, and is, appellant's position that evidence of ownership and permission to operate a vehicle with defective brakes suffices to make out a prima facie case of negligence.[4] In support of that position he relies upon cases of sudden brake failure where there is either direct evidence of, or evidence to support a reasonable inference of, notice to the owner of the vehicle that the brakes were faulty. *See, e. g.,* Currie v. United States, 312 F.2d 1 (4th Cir. 1963); District of Columbia v. Tilghman, D.C. Mun.App., 157 A.2d 629 (1960). Aside from the difference between a sudden brake failure and a slight pull to the left insofar as establishing the existence of a brake defect is concerned, however, it is clear that appellant's evidence in chief failed to show actual notice to appellee of any malfunction of the brakes, nor could it reasonably support an inference of notice to the owner.

We nevertheless must disagree with the court's holding that "[t]he record is completely devoid of any evidence that defendant had notice, actual or constructive of the defects in the braking system . . . ." The court recognized that "some of the missing links" in appellant's case had been supplied by the defense, but felt that even the defense testimony failed to supply evidence of notice to appellee. It held that absent such evidence there could be no liability, citing Peterson v. Nevada Motor Rentals, Inc., 28 Colo.App. 102, 470 P.2d 905 (1970). In our judgment, however, the evidence that the truck driven by appellant had been repaired and serviced not long before the accident coupled with the expert testimony in defense concerning the greasy substance on the brake shoe and its effect upon the truck when the brakes were applied was sufficient to raise a jury question on the issue of constructive notice to appellee of a brake malfunction. As a consequence, it was error to base the grant of appellee's motion for judgment n. o. v. on this ground.

We also disagree with the court's conclusion that, assuming the existence of a defect which caused or contributed to cause the accident, the rationale of Ravin v. Hanson, D.C.Mun.App., 142 A.2d 830 (1958), would compel a finding of contributory negligence as a matter of law. We do so recognizing that whatever appellee or Staff Builders knew or should have known regarding an alleged defect in the brake system of the truck, it was appellant who testified affirmatively that he had driven the truck on several occasions before and the condition of the brakes had been the same as it was on the day of the accident. Additionally, he had on that date driven several miles before turning off the highway and each time he had braked the truck it had pulled to the left. Moreover, at no time before the accident did he mention to anyone the fact that the brakes were not operating properly.

In the *Ravin* case the appellant discovered the brakes on his car were low and he took it in for brake service. The brakes were adjusted and fluid added, no leakage having been found. Later that day, after traversing a number of miles on his way home from work, he thought he noticed that the foot brake seemed lower than before. Almost immediately thereafter, as the car picked up speed and he attempted to brake, he found he had no pressure or braking power. The trial court

---

4. Appellant also argues that there is evidence of negligence and causation in his case by reason of appellee's violation of D.C. Traffic & Motor Vehicle Reg. § 142(1) which reads:

All brakes shall be maintained in good working order and shall be so adjusted as to operate as equally as practicable with respect to the wheels on opposite sides of the vehicle.

In view of our disposition of the case we need not treat this issue.

found Ravin negligent and this court affirmed, stating at p. 832:

It is our conclusion that although the evidence here did not compel the finding of negligence, it will support it. An automobile driver who has no notice of faulty brakes, and could not discover the defect through the exercise of reasonable care, is not responsible for any damage caused by brake failure. If a driver knows or should know of such a defect, however, and takes no precautionary measures, he is liable for the consequences. From appellant's testimony that just before he started down the incline he thought the foot brake was not as high as before, and the car's recent history of brake trouble, the trial judge could have inferred that appellant knew, or should have known, that the brakes were not functioning properly, and further that his continuing to drive under such condition constituted negligence which was the sole, proximate cause of the damage to the property owner. Our decision on this point renders it unnecessary for us to consider the alternative ground advanced to sustain the finding of negligence. [Footnote omitted.]

█ The decision in Ravin v. Hanson, *supra,* was based on the resolution of an issue of fact rather than one of law.[5] The circumstances of this case differ, of course, yet the same principle of law applies. Just as it is for the jury to decide whether appellee Commercial Storage is to be charged with constructive notice of a supposed defect in the braking system of the truck, so also is it a question of fact whether appellant, with actual notice of that same defect, was negligent in continuing to drive the vehicle for an extended period of time and over a distance of miles, making pedal adjustments to compensate for the malfunction in the brakes as he drove. We do not view this case as one so extraordinary as to compel a finding of contributory negligence as a matter of law and conclude that the trial court erred in granting judgment for appellee notwithstanding the verdict of the jury.[6]

The court gave as its reason for granting the alternate motion for new trial that:

Plaintiff, at various times during the trial, made unnecessary references to insurance matters. The Court, exercising the discretion authorized by Parks v. Ratcliff, D.C.App., 240 A.2d 659 (1968), refused to grant defendant's requests for a mistrial following such references. These prejudicial remarks, however, may very well have influenced the jury, since there appears to be no other explanation for the excessive and unsupported verdict. [R. at 83.]

On voir dire appellant's counsel addressed the panel as follows:

. . . The other unusual aspect of this case is that part of Mr. Chavis' claim has been paid by insurance companies, just part of it, and we're going to introduce records of those payments because he was injured in the course of his employment, working for Staff Builders, and the insurance company of Staff Builders paid him compensation. They paid him two weeks loss of pay and his testimony will be that he lost more than that, and initially, they paid part of his medical bill, but not all of his medical bill, and his testimony will be to this. Now, against his background, would any of you ladies and gentlemen be prejudiced for or against him because part of his claim has been paid by his insurance company? I take it by your silence, you would not. Now ladies and gentlemen, have any of you ever worked for an insurance company? Are you related to anyone—

[DEFENSE COUNSEL]: I object, move for mistrial. [Trial Tr. at 12–13.]

---

5. *See in general* cases cited in 40 A.L.R.3d 9; 46 A.L.R.2d 404.

6. *See* Griffith v. Clearfield Truck Rentals, Inc., 427 Pa. 30, 233 A.2d 896 (1967); Cintrone v. Hertz Truck Leasing & Rental Serv., 45 N.J. 434, 212 A.2d 769 (1965).

The motion for mistrial was denied but counsel was cautioned to use care in questioning the jury further on the subject. Counsel then repeated the last question he had posed concerning insurance and, without further objection, elicited that the husband of one potential juror was employed by an insurance company.

In opening statement counsel told the jury, without objection, that:

. . . Now, partially he has been repaid by his employer's compensation carrier. He has been repaid $170.00 by the insurance company compensation carrier of Staff Builders. In some parts, medical bills have been paid, I believe those at the Industrial Clinic. . . . [Trial Tr. at 24.]

And on direct examination appellant testified that he had been paid $170 by his employer's compensation carrier for loss of wages resulting from the accident. He also testified at some length concerning his visits to the Northeast Industrial Clinic.

■ Up to this point it might be argued that the introduction of insurance into the case was not error despite the general rule that precludes the introduction of evidence of receipt of workmen's compensation benefits.[7] In most of the decided cases the offending references to insurance were made by defense counsel, to the prejudice of the plaintiff and not, as here, by the plaintiff himself. It is not clear in this case why appellant proceeded as he did[8] but in most instances a contained examination about compensation insurance would not appear to prejudice a defendant and might even work to his benefit.

There came a time, however, when appellant called a witness from the Northeast Industrial Clinic through whom he wished to introduce bills and records of the Clinic covering the treatment he had received.

Counsel was having some difficulty in qualifying the witness to testify about the treatment given appellant and the charges made for services rendered. Ultimately, when the witness was asked how the billing was done at the Clinic her answer was:

After the doctor has completed the treatment of the patient, he's billed. If it's the Workmen's Compensation, the insurance carrier—Workmen's Compensation carrier is billed. *If it turns out to be liability, which this case of Mr. Chavis is,* the attorney and the defendant are billed. [Trial Tr. at 80; emphasis supplied.]

An objection and motion for mistrial were immediately forthcoming. Defense counsel protested that there was no possible way that the jurors could forget the testimony that this was a case of liability, nor could the testimony be restricted as a reference only to liability under the employer's Workmen's Compensation insurance. The court thought proper questioning could clear up the matter and denied the motion. Extensive examination and cross-examination covering appellant's visits to the clinic followed but no attempt was made by either counsel to repair the damaging effect of the witness' testimony on the jury. In all probability, each was aware of the prejudicial nature of the testimony and each was loath to compound it. *The court later showed the same concern* in the following colloquy at the bench:

THE COURT: . . . While we're up here, one thing I want to admonish you on is this insurance bit. I see no reason to mention that word again throughout this trial.

[PLAINTIFF'S COUNSEL]: Have I done it?

7. *See generally* Annot., 77 A.L.R.2d 1154 et seq.

8. It appeared that counsel wanted the jury to know that under the collateral source doctrine a plaintiff could recover his expenses from defendant despite the fact that the expenses were also covered by insurance.

THE COURT: Not since the other witness, but I'm a little bit concerned we've been talking about it unnecessarily. A person went to the employer's carrier —Well, if we reach oral argument, or through another witness, or what have you, let's refrain from any mention of the word. [Trial Tr. at 127°-28.]

In Parks v. Ratcliff, D.C.App., 240 A.2d 659 (1968), cited by the trial court as authority for granting a new trial, this court adopted a less rigid approach to insurance matters being broached at trial, at least as far as liability insurance is concerned. We there said:

. . . At any rate, we feel that the time has come when the mere mention of insurance in a negligence case ought not ipso facto require a mistrial. Much must be left to the discretion of the trial judge who has a far better grasp and feel of the case than does an appellate court and is much better qualified to measure the inflammatory effect or lack of such effect, on a jury by reference to insurance. [*Id.* at 661; footnote omitted.] [9]

Insofar as the testimony about workmen's compensation coverage is concerned, we would be uneasy in affirming the grant of a new trial were it not for the testimony of the witness from the Northeast Industrial Clinic. True, the constant references to compensation benefits were unwise and usually irrelevant, but the telling point is that the cumulative references to insurance eventually, and perhaps inevitably, led to prejudicial error; viz., to a witness stating flatly that this case was one of liability. No matter that the witness was referring to workmen's compensation liability; there is no way of knowing that the jurors understood this to be so, nor could the matter have been ex-plained to them without risking further prejudice to the defense. This circumstance and, in the court's mind, the excessive verdict convince us that it was no abuse of discretion to grant a new trial.

Accordingly, the judgment non obstante veredicto is reversed and the cause remanded for a new trial.

So Ordered.

9. The issue of liability insurance again entered this case when the police officer was asked if he had given a statement concerning this case to anyone and, after protracted wrangling by counsel over whether such state-ment existed, was asked to whom the statement was given. He answered, in part, that "the gentleman was from an insurance company, I believe".