CECO CORPORATION, Appellant,

v.

Nathaniel MALONEY et al., Appellees.

No. 13575.

District of Columbia Court of Appeals.

Argued April 11, 1979.

Decided July 24, 1979.

David F. Grimaldi, Washington, D.C., for appellant.

Wayne M. Mansulla, Washington, D.C., with whom Joseph H. Koonz, Jr. and James A. Mannino, Washington, D.C., were on the brief, for appellees Nathaniel Maloney and Matilda Maloney.

Robert G. Blackford, Mount Airy, Md., for appellee Maryland Casualty Company.

Before KERN, NEBEKER and MACK, Associate Judges.

KERN, Associate Judge:

The Statement of the Case in appellant's brief describes accurately the background of this appeal.

This case involves alleged injury and damage sustained by the male plaintiff, Nathaniel Maloney, on August 7, 1973, when as an employee of a general contractor, Hyman Construction Company, and engaged in construction of the Library of Congress Annex in the District of Columbia, he sustained a twisting injury to his knee while allegedly walking on concrete formwork/decking erected by the defendant here, Ceco Corporation, a subcontractor engaged in the construction of decking or formwork for cement flooring. The intervenor-plaintiff, Maryland Casualty Company, was the Workmen's Compensation carrier for the Hyman Construction Company and paid

plaintiff Maloney benefits in the total amount of $34,808.43. Plaintiffs' case alleged that Ceco Corporation had not secured a plywood board on the decking. (Maryland Casualty Company did not participate in the trial.)

The case was tried before a jury and Judgment entered in favor of the male plaintiff against Ceco Corporation upon the jury's verdict in the amount of $136,000.00. Thereafter, the defendant Ceco filed a Motion for Judgment Notwithstanding the Verdict and/or New Trial, which Motion was denied by the court. [Appellant's brief at 3.]

Appellant challenges the propriety of certain rulings by the trial court made before and during the trial which, it asserts, were erroneous and therefore require reversal of the judgment.

■ First, the claim is made that it was error for the court to refuse to continue the trial in order to enable counsel to take the depositions of appellees' two expert witnesses. The record reflects that at the pretrial conference the court "granted leave to [appellant] to take the deposition of plaintiff's so-called experts," but the court also directed that discovery should *not* affect the trial date. (Record at 34.) It is conceded that a date for taking the depositions of appellees' two experts had been set prior to trial and that appellant's counsel cancelled this date. Only four days then remained

before trial was to begin and efforts to reschedule the depositions were unsuccessful since the witnesses were unavailable on these particular days. Appellant requested that the trial·be postponed but both the calendar control judge and the trial judge denied its motion for continuance.

We are unable to say that the trial court clearly abused its discretion in refusing to postpone the trial, *Harris v. Akindulureni*, D.C.App., 342 A.2d 684, 685 (1975), given the facts that (1) it was appellant's counsel who cancelled the deposition of the witnesses on the date scheduled; (2) the scheduling of the depositions was so close to the date of the trial as to put the parties on notice that effecting a rescheduling of the depositions *before* trial would be extremely difficult; and (3) the relative lack of complexity of their testimony, thereby enabling counsel to subject them to adequate cross-examination during trial without the need to have had pretrial discovery.[1]

■ Next, appellant contends that the court erred in ruling that the jury might consider as evidence relevant to the standard of care to be met by appellant Occupational Safety and Health Administration (OSHA) Regulation, 1926.701,[2] District of Columbia Safety Regulation 11–21011 and American Concrete Industry (ACI) Recommended Practices.Provisions 1.1.2, 1.2.1.[3] It argues that they were inapplicable, by their express terms, to the factual situation in

---

1. In essence, the witnesses read published government regulations and industry recommendations relating to the erection and maintenance of formwork for the pouring of concrete in the construction of buildings and opined that such regulations and recommendations were applicable to the formwork at the scene of the accident described by other witnesses.

2. OSHA Regulation 1926.701 states in pertinent part:

   Formwork and shoring shall be designed, erected, supported, braced and maintained so that it will safely support all vertical and lateral loads that may be imposed upon it *during placement of concrete.* [Emphasis added.]

3. Those sections are set forth in pertinent part below:

   —1.1.2—Design and erection—Formwork should be designed, erected, supported, braced and maintained so that it will safely support all vertical and lateral loads that might be applied until such loads can be supported by the concrete structure.

   —1.2—Loads.

   —1.2.1—Vertical loads—Vertical loads consist of a dead load plus an allowance for live load. The weight of formwork *together with the weight of freshly placed concrete is dead load.* The live load consists of the weight of workmen, equipment, runways, and impact, and should be taken as not less then 50 psf of horizontal projection. [Emphasis added.]

the instant case. Specifically, appellant argues that the OSHA Regulation and the ACI Recommendations requiring that formwork erected must support the concrete and persons engaged in pouring it were not applicable to the injury of appellee Maloney because he fell "prior to the concrete being poured." (Brief at 26.) However, the record contains testimony from which the jury might have concluded that concrete was in fact being poured at the time of the accident in the immediate area of appellee's fall. [Supp. Record II at 10, 13, 15, 30–31, 38, 45, 50; Supp. Record at 44, 46–47, 82, 90, 102.]

Appellant contends it was error for the court to admit the D.C. Safety Regulation which requires "[a]ny material . . . serving as a workplace . . . be . . secured . . . [so] that it cannot . . slide, [or] otherwise move about . . . in any manner to endanger employees" as evidence relevant to the standard of care to be met by appellant. It argues that the large plywood board upon which appellee Mahoney stepped and which was not secured, thereby causing him to fall, was not "serving as a workplace" within the meaning of the Regulation. This was contradicted, though, by evidence credited by the jury that this board was a part of the decking erected for the purpose of pouring concrete by appellee and his crew. (Supp. Record at 39, 44, 82, 85, 94, 106–07; Supp. Record II at 11, 13, 15, 40, 45, 50, 53.) Accordingly, the Regulation was relevant to the instant case and properly admitted into evidence.[4]

■ Finally, appellant complains that the trial court, by allowing Maryland Casualty *not* to participate at trial and by precluding reference to its presence as a party in the case, violated Super.Ct.Civ.R. 17(a). This Rule requires that: "Every action shall be prosecuted in the name of the real party in interest" but the real party in interest was the injured workman. Under the so-called Collateral Source Rule, long established in this jurisdiction, *Bradshaw v. United States*, 143 U.S.App.D.C. 344, 356, 443 F.2d 759, 771 (1971); *Hudson v. Lazarus*, 95 U.S. App.D.C. 16, 19, 217 F.2d 344, 347 (1954); *Adams v. Turner*, 238 F.Supp. 643, 644 (D.D.C.1965), appellees were empowered to sue to recover from appellant, the alleged tortfeasor. They had this right to recovery without regard to the fact that appellee Maloney had already received workmen's compensation payments from his employer's insurance carrier, Maryland Casualty. Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 933(a) (1976) (made applicable to the District of Columbia by D.C. Code 1973, § 36–501). We do not deem the carrier under these circumstances to be the real party in interest in this negligence suit and so we find no violation of Rule 17(a).[5] *See Joyner v. F. & B. Enterprises, Inc.*, 145 U.S.App.D.C. 262, 448 F.2d 1185 (1971).

The trial court's ruling that the participation of Maryland Casualty should not be brought to the jury's attention is quite consistent with the long-standing practice here of barring "the introduction of insurance into the case." *See Chavis v. Commercial*

---

4. Equally without merit is appellant's argument that the court erred in denying its motion for judgment notwithstanding the verdict because the testimony as to the exact manner of appellee's fall was contradictory and hence required the jury to speculate as to "the mechanics of the . . . injury and the location of his accident." (Brief at 27.) There was evidence that a large plywood plank put into place by appellant and upon which appellee walked while performing his duties for his employer *was* not fastened, thereby causing him to fall and injure himself. (Supp. Record at 39, 41, 100; Supp. Record II at 40, 48, 50.)

5. Appellee opposed this intervention on grounds that the carrier had a lien "against any recovery" he might make from appellant, thereby obviating the necessity for its intervention. (Record at 23.) Maryland Casualty, however, appeared to believe it must intervene to protect its lien. *See Travelers Insurance Co. v. District of Columbia*, D.C.App., 382 A.2d 269 (1978) (the workmen's compensation carrier for an employer did not adequately protect the lien on the settlement proceeds that it claimed arose from its payment of workmen's compensation to the employee without a formal award by failing to intervene in suit by an employee against a third-party tortfeasor or assert a lien

*Storage, Inc.,* D.C.App., 324 A.2d 695, 700 (1974).[6]

*Affirmed.*

NEBEKER, Associate Judge, dissenting:

The majority concludes that by their terms, the OSHA regulation and the ACI provision are applicable to the facts at hand. I would hold that they are inapplicable as a matter of law. By their terms, the regulation and the provision relate only to the ability to endure the pouring of concrete. See italicized portions of regulations quoted in footnotes 2 and 3 of the majority opinion. While there is evidence in the record that the injured worker was directing the pouring of concrete at the time he fell, the record is clear that the concrete was not being poured on the framework from where the workman fell. The majority opinion side-steps this issue by stating that "the record contains testimony [that] concrete was in fact being poured . . . *in the immediate area* of the appellee's fall." *Ante* at 938 (emphasis added). The appellee testified that, at the time of the accident, only columns were being poured and that he was the foreman in charge of pouring these columns. He had positioned himself about 50 to 60 feet from where the pouring was taking place. A co-worker placed his distance at 40 to 60 feet from the columns being poured. The area from which the appellee fell was not ready to receive concrete. An excerpt from the record will help to demonstrate my point.

THE COURT: . . . It says that the forms are supposed to be sufficiently strong to hold the concrete as it is poured . . . [Reading:] "Formwork and shoring shall be designed, erected, supported, braced, and maintained so that it will safely support all vertical and lateral loads that may be imposed upon it during placement of concrete." That wouldn't seem to me to have anything to do with the walking on the plywood planks prior to the placing of the concrete.

[PLAINTIFF'S ATTORNEY]: Until—until such loads can be supported by concrete.

THE COURT: It doesn't say until. I'm reading from OSHA now.

[The regulation was reread.]

That wouldn't seem to have anything to do with the walking on the plywood planks prior to the placement of the concrete.

[PLAINTIFF'S ATTORNEY]: Your honor, I guess this isn't coming through clear. Mr. Maloney is a labor foreman in charge of pouring the concrete on this job site. He's in charge of placing the concrete on this job site. He's in charge of placing the concrete—he, himself, and the George Hyman workers that came into this courtroom and testified today. That is their job, pouring the concrete, so they are in the process of pouring concrete on this floor and they are part of the vertical load—

THE COURT: Yes, but not at this particular place where he is walking.

[PLAINTIFF'S ATTORNEY]: This is the beginning. They are supervising the pouring of concrete. That is their job; that is their job, to pour the concrete and two experts have testified to this, Your Honor. Charlie Green has testified that this does apply once the formwork is put up, immediately.

At this point, the trial court ruled that the OSHA regulation was inapplicable by its terms, to the situation.

Of course, it might have an effect—the effect of affecting the damages in this case; but I don't think it would be fair, equally fair to all parties, so that's the reason I denied.

I permitted the case to proceed without the indication of the place of Maryland Casualty Company in the case.

[Supp. Record at 4.]

---

claim prior to the payment in settlement of the action despite having notice of the suit).

6. The court commented just before the trial began:

With respect to the mentioning of the participation of the Maryland Casualty, its—Maryland Casualty—its participation would've contributed nothing to the issues in the case, the issue of negligence.

Following the defense's case, the appellee's attorney urged the trial court to allow this OSHA regulation as a standard in the industry, despite his having earlier ruled it inadmissible as a regulation. The appellant's attorney challenged the propriety of the proposal, to which the trial court responded:

I can see this is a very confusing matter and I can see your consternation and your concern about there being a conflict, a basic conflict, or inherent conflict in my ruling.

If they're not governed by this regulation, you say, then how can it be a standard by which they must be guided. It's a logical question.

Quite frankly, I'm not—in this particular area even now in this very confusing case, I'm not sure where we stand.

\* \* \* \* \* \*

I'm afraid what we're trying to do to you, what I'm trying to do to you, [plaintiff's attorney], is something that I really can't do. Maybe I'm trying to be on both sides of the fence in order to avoid error, and in doing so, I'm making the error worse.

[PLAINTIFF'S ATTORNEY]: If I may say something?

THE COURT: Can you explain to me how we can logically use these regulations as standards and at the same time say that they are not regulations which apply to this situation?

[PLAINTIFF'S ATTORNEY]: Yes, Your Honor, we can, because regulations, recommendations and standards are just that, they're standards. If they were regulations, which I tried to prove and which I still maintain that I did prove they were regulations in effect, but assuming arguendo that they weren't in effect regulations, that hurts the plaintiff's case to the extent that he can't prove a violation of safety regulations and assumption of risk—

THE COURT: You can't prove violations of regulations.

[PLAINTIFF'S ATTORNEY]: Yes, sir.

THE COURT: I've ruled that.

[PLAINTIFF'S ATTORNEY]: That's correct. But what I'm saying, Your Honor, is that after giving that I can still use those regulations to show a standard in the industry as my experts testified to.

\* \* \* \* \* \*

THE COURT: Well, I ruled that they were not regulations which governed this situation because I ruled that by their language they didn't apply to this situation. That's the basis for my ruling, so you see if I'm saying they don't apply to this situation, how can I say they are standards for this situation?

[PLAINTIFF'S ATTORNEY]: Well, guidelines, Your Honor, standards. I think—

THE COURT: If you name a rose by any other name, it would smell as sweet. Guidelines or standards or what have you, they're synonymous for our purposes here, aren't they?

[The appellee's counsel addressed the ramifications of *Bowman v. Redding & Co.*, 145 U.S.App.D.C. 294, 449 F.2d 956 (1971), whereupon the judge responded:]

THE COURT: I know, but you get back to the point, [plaintiff's attorney], that I've said that they don't by their language apply to this situation. That's the reason I've said they're not regulations which govern this situation, so if they don't by their language cover this situation, how can they be even standards or guidelines for this situation? That's the conundrum; that's the difficulty.

[The appellee's attorney then discussed the possibility of the appellant's calling an expert from OSHA, whereupon the court asked:]

THE COURT: What did I do with these regulations? Did I admit them or not . . . .. All right. There it goes, error or not.

Thus the regulation was admitted as a standard in the trade. It was not admitted as a regulation, however, because "they are not regulations which apply to this situation." All agreed that the regulation was valid

and currently in force. As a matter of law, the ruling to admit the regulation, while holding that it was inapplicable to the facts, was erroneous. Therefore, the trial court erred in making its second and incongruous ruling in the face of its earlier correct one. I am reminded of the lines from Gilbert and Sullivan's *The Pirates of Penzance*: "How quaint the ways of paradox. At common sense she gaily mocks. . . . A paradox, a paradox, a most ingenious paradox."

As a matter of law, the OSHA and ACI provisions are inapplicable by their terms. The facts underlying these conclusions are simple. No one contends that concrete was being poured on the framework overlying the deckwork through which the appellant fell. No one argues even that it was in a sufficiently advanced stage so that it could arguably have been considered as appearing that it was ready to receive concrete. All agree that the concrete was being poured into a column and not onto the deckwork. There is no dispute that the appellee was injured at approximately 50 feet from the column being poured. On these facts, the OSHA regulation and the ACI recommendation are inapplicable. They were designed only to assure that the framework and deckwork would remain in place while under the weight of wet concrete together with the weight of the men and tools used to pour that concrete. Accordingly, I dissent.