## POTOMAC SMALL LOAN CO. v. MYLES et al.
### No. 122.

Municipal Court of Appeals for the District of Columbia.
Nov. 16, 1943.

Harry Protas, of Washington, D. C., for appellant.

No appearance for appellees.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

CAYTON, Associate Judge.

Plaintiff appeals from an order of dismissal for want of prosecution. The action, which was on a promissory note, was within the $50 limitation; hence it was filed in the Small Claims and Conciliation Branch of the Municipal Court, where exclusive jurisdiction is reposed in claims of that size.[1] When the case was called on the return day plaintiff answered by attorney; defendants, not being represented by counsel, appeared in person. The parties were told by the clerk that the case would be called later for trial. An hour later it was again called. On neither occasion did the judge inquire of defendants whether they disputed the claim or as to the nature of their defense, if any.

Plaintiff's attorney then informed the judge that since he had been unable to learn whether the claim was disputed, his client was not present and he was not ready for trial. He asked for a continuance of one week, or that he be given thirty minutes to produce the witness and proceed with the case. The trial judge refused both requests, and insisted that the case proceed to trial. He presented plaintiff's attorney with the alternative of taking a non-suit or of having the case dismissed by the court for want of prosecution. The attorney refused to take a non-suit and the court ordered a dismissal for want of prosecution.

There being no appeal of right in Small Claims cases, plaintiff petitioned this court for allowance of appeal.[2] We granted the appeal, not only to fix the rights of these parties, but also because it seemed wise to clarify a highly important phase of small claims procedure.

---

[1] Code 1940, § 11—801 et seq.    [2] Code 1940, § 11—772.

We need not speculate as to what the situation would have been in ordinary trial practice; we are here dealing with a procedure especially devised by legislation for the handling of small claims. The court established for that purpose owes its existence to an Act of Congress. It is not a new court as such, but a separate branch of the Municipal Court, presided over by the judges of that court sitting in rotation. The new system was designed to cope with the problems of litigants in small cases which it was felt had not been properly handled under previously existing Municipal Court procedure.[3]

In making its favorable report on the bill establishing the Small Claims and Conciliation Branch, the United States Senate committee emphasized that: "The purpose of the bill is to improve the administration of justice in small civil cases and make the service of the municipal court more easily available to all of the people whether of large or small means; to simplify practice and procedure in the commencement, handling, and trial of such cases; to eliminate delay and reduce costs; to provide for installment payment of judgments; and generally to promote the confidence of the public in the courts through the provision of a friendly forum for disputes, small in amount but important to the parties." The committee of the House of Representatives adopted that statement and added: "No alternative can solve the underlying difficulties inherent in the present municipal court system, with reference to small claims litigation. This legislation affords the only comprehensive means of solving the problem."

One of the principal purposes of the Act was to provide informality and the kind of friendly atmosphere not found in ordinary procedure.[4] To accomplish that purpose conciliation procedure was prescribed in every case. Unwilling to leave that phase of the procedure to the predilections of individual judges, Congress in Section 8 of the Act[5] ordered: "Immediately prior to the trial of any case, the judge shall make an earnest effort to settle the controversy by conciliation." In the same spirit and pursuant to the Congressional mandate, the court adopted Rule 14c which provides: "Immediately prior to the trial of any case, *the judge shall elicit from the defendant or his attorney a statement as to the nature of the defense, and shall make an earnest effort to settle the controversy by conciliation.* If the judge fails to induce the parties to settle their differences without a trial, he shall proceed with the hearing on the merits." (Italics supplied.)[6] Such rule has the force and effect of law.[7] The provisions of the Act and the rule just cited are not mere ornamental fringes tacked onto the border of the legislation. They furnish one of the basic features of small claims procedure;[8] they help substitute for the more technical ordinary trial procedure, the easy, informal atmosphere so essential to a satisfactory disposition of small claims.

The Congressional edict is mandatory; so is the rule. The judge is required

---

[3] See Report of Special Committee, Board of Directors, D. C. Bar Association, Sefton Darr, Chairman (December, 1936).
See also Wise v. Herzog, 72 App.D.C. 335, 114 F.2d 486, quoting extensively from the introduction by Justice Owen J. Roberts to Bull. No. 607, U. S. Dept. of Labor (1936), by Reginald Heber Smith and John S. Bradway.
See also the following, quoted in that case:
Wigmore, Introduction to 'Bull. No. 8, Am.Jud.Soc. (1915) 24:
"If there is one sad anomaly that should stand out in our present days of conscientious self-searching, it is the harsh fact that, with all our prating about justice we deliberately withhold it from the thousands who are too poor to pay for it."
Smith, Justice and the Poor (1919) 41:
"The inability to provide justice in small causes has always been one of the weakest points in our system of administering justice. From the days of ordeal by battle, the method provided by the common law for proving and reducing to judgment any type of small claim has been cumbersome, slow, and expensive out of all proportion to the matter involved."
See also, Legis, 34 Col.L.Rev. 932, and authorities there collected.

[4] See opinion of Chief Judge Richardson in Interstate Bankers v. Kennedy, Mun.App.D.C., 33 A.2d 165.

[5] Code 1940, § 11—808.

[6] This rule is complimentary to Rule 15 (a) which provides that no answer, plea or other defense need be filed. Instead of a written defense it provides for a verbal statement in open court.

[7] Wise v. Herzog, 72 App.D.C. 335, 114 F.2d 486, and cases there cited.

[8] See our decision in Hodgkins v. Beckner, Mun.App.D.C., 32 A.2d 113. (Opinion by Hood, J.)

in *every* case to do two things before ordering *any* case for trial: (a) To elicit from the defendant the nature of his defense; and (b) to make a real, not perfunctory, effort to compose the differences of the parties and if possible to bring them *together in a mutually satisfactory settlement.* In this the judge is more than a mere presiding umpire. He is the "guiding spirit and the controlling mind"[9] of the proceeding. He is charged with the positive duty of maintaining a conciliatory influence, and of inducing and arranging settlements whenever possible. From even a casual reading of the Act and the rules, it is apparent that *no exception was intended in this regard.* Conciliation procedure was made mandatory in *every* case, and the judge had no right to order the case tried without first making a real, "earnest" effort to settle the matter on a friendly basis. Only when he had failed in his role as conciliator was he authorized to order a trial.

And yet the record before us shows that the trial judge completely omitted to perform this vital mandatory function. To this very day neither the judge nor plaintiff's attorney knows whether defendants were claiming a defense, or not. Nevertheless the judge assumed that the case was one for trial, that the defendants were claiming a defense, and that there was a controversy which could not be settled by conciliation.

█ This was a completely unwarranted assumption in view of the Act and rules we have cited, and in view of the established practice in the Small Claims Branch. One or more of these various contingencies may have arisen: (a) Defendants may have wished a continuance; (b) defendants may have wished to confess judgment for the entire amount of the claim or for a lesser amount; (c) defendants may have wished to pay the claim at once; (d) defendants may have wished to request the privilege of installment payments, authorized by the Act;[10] (e) defendants may have wished to set up their claim to exemptions[11] or (f) as we have already indicated, both parties may have been amenable to conciliation if guided in that direc-

tion by the judge. All these possibilities the trial judge ignored, and apparently insisted on treating the case as a legal contest. It is our plain duty to hold that such action constituted an unmistakable violation of the Act and the rules.

Under the circumstances, it was clearly error to refuse plaintiff's request for the opportunity to produce his witness within a half-hour. This was an entirely reasonable request for a short indulgence. Such requests are very rarely refused. No reason appears for its refusal here. Even assuming (which we cannot in view of what the record shows) that the case required a trial, it seems to us that justice would have been much better served by holding the hearing on that very day, instead of taking action that would require the parties to return a second time.

Forcing a non-suit would have solved nothing and would only mean the probable refiling of the case and another court appearance by defendants resulting in two trips to court when one should have been sufficient.

We are aware that under the Small Claims Act[12] and the Rules,[13] it was intended that so far as possible, every case should be disposed of on the return day, and that to accomplish that purpose the established practice has been to have plaintiff's witnesses in court *or available* on the return day. We also know that only a small number of cases result in trials, the great majority being disposed of by default, by amicable settlement and dismissal before the return day, or by the methods of conciliation we have above described.[14] Therefore this plaintiff was justified in assuming that *if* defendants appeared, and *if* they contested the case, and *if* conciliation failed he would be given a few minutes at least to produce his witnesses and proceed with the trial.

█ We need not repeat the familiar rule that granting or refusing of a continuance is usually discretionary and not subject to review on appeal except when it is shown to have been an abuse of discretion. Nor need we labor the point that the discretion involved "does not mean the arbitrary will or merely individual or

---

[9] Goldman v. Ashkins, 266 Mass. 374, 165 N.E. 513, 516.

[10] Code 1940, § 11—811.

[11] Small Claims Rule 20.

[12] Code 1940, § 11—808.

[13] Small Claims Rule 14a.

[14] The latest Annual Report of Clerk Carr to the U. S. Attorney-General reveals that of 23,962 cases filed, 1467 resulted in actual trials.

personal view" of the judge.[15] "Judicial power is never exercised for the purpose of giving effect to the will of the judge; always for the purpose of giving effect * * * to the will of the law."[16] "The chief test * * * is whether in a given case it is in furtherance of justice. If it serves to delay or defeat justice it may well be deemed an abuse of discretion."[17] Judged by these tests we have had no difficulty in deciding that the trial judge, in refusing plaintiff's request for a half-hour wait, committed a plain abuse of discretion.

The Small Claims Court is in its sixth year of operation and has become an established and valuable arm of the local judicial set-up. It has successfully performed the function for which it was created, namely to improve the administration of justice in small cases, to provide assistance to needy litigants and furnish a simple, informal, expeditious method of procedure.[18]

"This thoroughly commendable purpose"[19] can only continue to be accomplished if the judges sitting in that Branch uniformly follow the procedural methods prescribed in such unambiguous language by Congress.

Congress plainly declared its purpose "to promote the confidence of the public in the courts through the provision of a friendly forum for disputes, small in amount but important to the parties."

The "confidence of the public in the courts" cannot be promoted if plaintiffs are subjected to summary, unwarranted dismissals; or if defendants are led to feel they can so easily escape a claim, only to be subjected in a few days to the mystification and chagrin of a second suit. In the Small Claims Branch the "day in court" should be easy, accessible, understandable, and as far as possible, a single decisive day. Above all, it must conform to the legislative purpose.

If that purpose be ignored it would amount to a flouting of the Congressional will, and would very soon divest that Branch of its beneficent attributes, reinstate the old, clumsy techniques and again subject small claims litigants to methods which Congress has found inadequate and expressly repudiated.

The case will be reversed and remanded with instructions to vacate the order of dismissal, and for further proceedings consistent herewith.

Reversed.

---

[15] Grant v. Michaels, 94 Mont. 452, 23 P.2d 266, 270.

[16] Osborn v. Bank of United States, 22 U.S. 738, 865, 6 L.Ed. 204.

[17] Hill v. Finnemore, 132 Me. 459, 172 A. 826, 833.

[18] Justice Wiley B. Rutledge, Before Committee on Legal Aid Work, American Bar Association (September 29, 1941), speaking of D. C. Small Claims Court: "The percentage of cases in which there was an application for appeal was relatively negligible. There have been only forty-five such applications in the last three years. That means final adjustment of the controversy at the stage of initial hearing, and why? It is because the court does not apply the normal judicial process. Lawyers are not crossing swords over the table and fighting like Spanish cocks about every bit of evidence—the court uses essentially administrative methods. The result is that the citizen does not feel that the system of justice is a system for the rich and the well-to-do and not one for the average man or the poor man. He has entry to a tribunal which disposes of business, expeditiously and justly."

Edward M. Carr, Work of District of Columbia Small Claims Court, Monthly Labor Review (August, 1939) U. S. Department of Labor. See also John S. Bradway, Duke University, Benefits, Functions and Procedures of Small Claims Courts, Monthly Labor Review (January, 1940) U. S. Department of Labor. For comments concerning functioning of such courts in other jurisdictions, see Sanderson v. Niemann et al., 1941, 17 Cal.2d 563, 110 P.2d 1025; McLaughlin v. Municipal Court of Roxbury Dist., 1941, 308 Mass. 397, 32 N.E.2d 266; Leuschen v. Small Claims Court, 191 Cal. 133, 215 P. 391; Flour City, etc., Co. v. Young, 150 Minn. 452, 185 N.W. 934; McLaughlin v. Levenbaum, 248 Mass. 170, 142 N.E. 906; Superior Wheeler C. Corp. v. Superior Ct., 203 Cal. 384, 264 P. 488.

[19] Wise v. Herzog, supra [72 App.D.C. 335, 114 F.2d 488].