**DISTRICT OF COLUMBIA, a Municipal Corporation, Appellant,**

v.

**Hugh J. TILGHMAN in his own right and to the use of the Eastern Insurance Company, a corporation, Appellees.**

No. 2446.

Municipal Court of Appeals for the District of Columbia.

Argued Oct. 5, 1959.

Decided Feb. 2, 1960.

---

Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., argued for appellant. Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, Hubert B. Pair and Ted D. Kuemmerling, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellant.

Samuel F. Ianni, Washington, D. C., with whom John L. Schroeder, Washington, D. C., was on the brief, for appellees.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

Appellees sued for damages resulting from a collision between appellee Tilghman's car and a truck owned by appellant and operated by one of its employees. Trial was to the court and at the close of appellees' case, the District moved for a finding in its favor, which motion was denied. The District elected to stand on its motion and offered no evidence. Judgment was entered for appellees and this appeal followed. The case coming to us in this posture, we, like the trial court, must view the evidence in the light most favorable to appellees, giving them the benefit of every inference that might reasonably be drawn from the evi-

dence and resolving all conflicts in their favor.[1]

These are the facts: A District truck driver was driving a loaded truck on a public street, traveling on a downgrade. The brakes suddenly failed and the driver attempted to avoid a collision with several cars and trucks ahead of him by turning to his left into a vacant lot piled with bricks. Before turning, he noticed Tilghman's vehicle approaching from the opposite direction. It was in its proper lane. He turned into its path and the collision occurred. He testified:

> "And I waved to him, and he wouldn't stop, so my truck went on like this and turned over on the side of the street like this [demonstrating]. There was traffic. I thought maybe I did the right thing. But coming into all these trucks and cars in front of me, because this was the only car in this right lane coming up Seventeenth Street, so I waved and blowed my horn. He didn't pay no attention to it, so I just come on in there headed for the brick parlor [pile] * * * so I wouldn't kill nobody or either to hurt myself, * * * so I used my best judgment to make that turn into I Street."

No question is raised concerning contributory negligence, the problem being whether the District was negligent.

The District advances these contentions: (1) It exercised reasonable care in maintaining the brake mechanism on its truck prior to the accident; and (2) its driver, confronted with a sudden emergency, acted reasonably and prudently in attempting to avoid the collision. Accordingly, the District maintains that to be held liable in this situation would impose liability without fault. With this position we cannot agree. We have no doubt that the truck driver was confronted with an emergency; however, there was other evidence.

Concerning the inspection given to the District's trucks, the following testimony was adduced:

"Q. Who takes these trucks to be inspected? A. Mechanics.

"Q. Well, do you drive it there,— A. No.

"Q. —or do they do the driving? A. I don't drive. They drives. We leaves it there and pick up another truck to take out.

"By The Court:

"Q. Are you talking about D. C. inspection, the regular inspection that we all have to have? A. Yes, ma'am.

"By Mr. Ianni:

"Q. Well, how—I mean your own personal—the District of Columbia— not the inspection for—that they have for all cars; I mean your own garage. A. They never inspect 'em. I mean the only time they look after them trucks when we put it on our card in the evening. After the bearing or something like that knocking, we put it——

"Q. [Interposing] And you were the— A. [Continuing]—on our trip ticket, that bearing.

"Q. And you were the only person that drove this truck? A. Well, as far as I know, I am the only one that drives it.

"Q. Yes. Well, did you ever make any reports that anything was the matter— A. [Interposing] I make reports every day.

"Q. [Continuing]—with this particular truck prior to the accident. A. What do you mean? Before I had the accident?

"Q. Yes. A. No.

1. Petty v. Rowe, D.C.Mun.App.1952, 91 A.2d 331, 332; Carow v. Bishop, D.C. Mun.App.1946, 50 A.2d 598, 601; Merriam v. Sugrue, D.C.Mun.App.1945, 41 A. 2d 166, 167.

"Q. None at all? A. Only—only about one time, that's about a month before the accident, my brakes gave out on me at Seventeenth and Benning, but a man come out and fixed that.

"Q. What was the matter with the brakes that time? A. Went bad.

"Q. Went bad? A. Uh-huh. I had stopped, though, when they went bad.

"Q. That was about a month before the accident? A. Yeah.

"Q. Do you know what the mechanics said was the matter with those brakes a month before the accident? A. One of the shoes come—I mean one of the—things. The same thing happened. When I hit 'em, just blowed out. He came out on the street and put new shoes and everything on 'em, the mechanic did. * * *"

In view of this testimony, we think a finding of negligence could have been made when the District elected to stand on its motion and offered no evidence. The trial court after hearing this testimony could have reasonably concluded that the repair work done was negligently performed, or that the inspection given to the truck was so inadequate as to cause actionable negligence. We think the state of the evidence was such that the District should have offered some proof to carry the burden it then had.

█ It is quite true that a driver with no notice of faulty brakes is not responsible for the damage caused by their failure if the defect could not have been discovered by the exercise of reasonable care.[2] But reasonable care was a question of fact for the trial court.[3] The District could possibly have shown that the repair work previously done was properly performed, or even if not properly done, that there was no causal connection between the disrepair and those factors which caused the brake failure in this instance. Instead, the District presented no proof and we cannot say that, in this posture, the evidence and inferences drawn therefrom, when viewed most favorably to appellees, would not support a finding of negligence. That we may not have reached a similar conclusion or that the evidence might not have supported such a conclusion if the District had elected to go forward, is of no consequence here.

█ Finally, concerning the "emergency rule," it is the law that if

" * * * the driver of an automobile is suddenly confronted with an emergency not of his own making and is compelled to act instantly, he is not guilty of negligence if he makes a choice such as a person of ordinary prudence would make in a similar situation, even though it afterwards develops he might have made a wiser choice. * * *"[4]

However, to proceed with " * * * due care in an emergency will not insulate an actor from liability for the consequences of the negligence that helped to bring the emergency about."[5] The trial court found the collision was due to the District's negligence and that finding is sustained here.

Affirmed.

2. Ravin v. Hanson, D.C.Mun.App.1958, 142 A.2d 830.

3. Boyd v. Reed, D.C.Mun.App.1958, 143 A.2d 516.

4. Gatton v. Cullins, 1943, 78 U.S.App.D.C. 170, 138 F.2d 425. See also, Baltimore & O. R. Co. v. Postom, 1949, 85 U.S.App. D.C. 207, 210, 177 F.2d 53, 56; Cox v. Pennsylvania Railroad Company, D.C. Mun.App.1956, 120 A.2d 214, 216. But compare, Grober v. Capital Transit Co., D.C.1954, 119 F.Supp. 100, 103.

5. 2 Harper & James, Torts, § 16.11 (1956).