**Ella and Mattahiah EYTAN, Appellants,**

v.

**William S. BACH, t/a The Ice House and as Antiques and Artisans, Appellee.**

**No. 10192.**

District of Columbia Court of Appeals.

Submitted May 26, 1976.

Decided June 3, 1977.

Mattahiah Eytan, pro se.

Ella Eytan, pro se.

No appearance was entered for appellee.

Before FICKLING * and KERN, Associate Judges, and REILLY, Chief Judge, Retired.

REILLY, Chief Judge, Retired:

This is an appeal from a judgment in the Small Claims Court [1] dismissing an action to recover $157.50—the total sales price of three paintings paid to a Georgetown retailer of antiques and miscellaneous secondhand furniture by appellants (a married couple). Their basic contention was that they had bought these paintings because the vendor had represented them to be the original productions of some 19th Century artist (or artists), notwithstanding the fact

---

* Associate Judge Fickling participated at argument and in the post-argument conference prior to his death on March 6, 1977.

1. Now a branch of the Superior Court. Plaintiffs in the action filed an application for allowance of appeal, which was granted. D.C.Code 1973, § 11–721.

that these were merely copies (as the purchasers subsequently discovered) processed and placed in frames to convey the impression of age.

When this case was reached on the calendar, the trial judge, in compliance with Small Claims Rule 12(a), sought to elicit from the parties the information bearing on the case and attempted to obtain a pretrial settlement. The principal claimant, the husband, told the court that he and his wife had come to the defendant's shop to purchase some antique paintings, where they inspected and touched several canvases. They selected three because the brittleness of the material, cracks in the paint, discoloration, grease stains on the back, and punctures in the frame, he asserted, led them to believe these particular items were old. The proprietor of the shop, conceding that these paintings were not genuine originals but recent reproductions, nevertheless insisted that they were worth considerably more than the purchasers had paid, saying that he had agreed to cut his prices in order to effectuate the sale. At the court's suggestion, he offered the claimants $50 in settlement. This offer was rejected, and the parties were instructed to return that afternoon for trial.[2]

When court reconvened, the trial judge said that in his opinion the complainants had no cause of action. At the request of the principal claimant, however, the court permitted him to make a statement of the facts and to present argument.

In his presentation, this appellant repeated much of what he had said in the conciliation proceedings, conceded that the vendor had made no express representation that the paintings were either originals or ancient, but contended that because he and his wife had, in the course of their inspection, displayed such interest in indicia of age, it became the legal duty of the dealer to disclose the true facts before the sale was completed. The only new fact he adduced was that the dealer did make a comment on one of the paintings—a plantation scene in which a group of white men in costumes of a past century were depicted with a black man in one corner of the canvas. The dealer remarked that paintings with black men in them were unusual in the 19th Century.[3] Plaintiff then argued that defendant was guilty of a breach of implied or express warranty. The court disagreed.

The trial judge found "no controverted issues of material fact."[4] Based on a "general knowledge of the economics of the locality," the trial judge concluded that the average price paid for each of the three paintings—approximately $50—was ". . . a sufficiently small amount to put any purchaser on notice that he was not buying a legitimate antique original work of art" and summarily dismissed the complaint.[5]

In the brief accompanying the application for allowance of appeal, appellants contended that the court erred in (1) ruling that the failure of a seller to disclose a material fact does not amount to a misrepresentation, (2) ruling that the doctrine of implied warranty of fitness has no application to second-hand goods, (3) relying upon its own knowledge and expertise in American art history to reach the conclusion that the purchasers should have known that the paintings were not old, but were reproductions, and (4) basing its judgment solely upon something said in the course of conciliation.

As abstract propositions of law, some of these contentions are not devoid of merit. This court has recognized that in certain circumstances, concealment of a "material fact is as fraudulent as a positive direct misrepresentation." *Andolsun v. Berlitz Schools of Languages of America, Inc.,* D.C. App., 196 A.2d 926, 927 (1964). Moreover,

---

**2.** All parties were present and not represented by counsel.

**3.** The claimant contends that this comment was tantamount to warranting that the painting was done in the 19th Century, but the trial judge noted that the vendor's observation seemed to be a caveat rather than a representation.

**4.** Certification of Trial Court at 1, Oct. 28, 1975.

**5.** *Id.* at 2.

D.C.Code 1973, § 28:2–315 makes no distinction between new and used goods in its discussion of implied warranties of fitness for a particular purpose. This section was enacted as a part of the Uniform Commercial Code, and courts have adopted the view that secondhand goods are within its coverage. *See Green v. Northeast Motor Co.,* D.C.Mun.App., 166 A.2d 923 (1961); *Overland Bond and Investment Corp. v. Howard,* 9 Ill.App.3d 348, 292 N.E.2d 168 (1972).

■ An examination of the proceedings—transcribed after appeal was allowed—reveals, however, that none of these issues is really raised by the record and that the judgment of the court does not rest upon any of the rulings attributed to it by appellants. What the court did hold was that a purchaser who bought artificially aged copies of primitive paintings for the low unit prices upon which he and the dealer ultimately agreed, could not credibly assign as fraud the fact that the articles purchased turned out not to be vastly more valuable—as, of course, original paintings would have been. Under the circumstances—the customer not having inquired as to whether the canvases were originals—we perceive no duty upon the part of the vendor to inform him of the obvious. If a customer went into a jewelry store and bought for $50 an item which looked like a diamond pendant set with pearls, it would plainly not be incumbent upon the sales clerk to warn the customer that what he had selected was a piece of costume jewelry with synthetic gems.

In taking this view of the matter, the record does not reflect that the trial judge [6] relied upon—or took judicial notice of his own knowledge of the history of American art—although in the course of oral argument, appellant accused him of doing so. The trial judge disclaimed this approach and his written findings make clear that this was not a factor.

■ Although appellants strongly urge that they were aggrieved because the court entered judgment against them before any testimony was taken and thereby prevented their calling witnesses, it is fundamental that a court may direct a verdict where the opening statement of plaintiff reveals that no cause of action exists. *Cook v. Safeway Stores, Inc.,* D.C.App., 354 A.2d 507 (1976) and cases cited at 508. Plainly, this principle also applies to jury-waived cases, including trials in the Small Claims Branch. Appellants argue, however, that it was improper for the court to decide the case simply upon something said in the conciliation proceedings. Presumably they are adverting to the familiar rule of evidence which excludes testimony of concessions made in settlement conferences.

It is not altogether clear that proceedings under Rule 12(a) fall into this category, for this rule requires the court to inquire into the nature of the claims and defenses—thereby implying that if there are no substantial issues of fact to support a valid claim, the court may take appropriate action even though Rule 12(b) provides for a trial when the parties fail to settle the controversy. But we need not decide this question here. Although the court expressed its view of the matter when the parties reconvened for trial, it did not enter formal judgment until it had heard the principal appellant's opening statement and orally pointed out what it deemed to be the fatal flaws in the described claim. It then granted summary judgment.

■ It is immaterial that the defendant did not formally move for summary judgment, but rather was awarded judgment by the court sua sponte. In the Small Claims Branch, informal procedures govern and the relevant inquiry is whether "substantial justice" has been achieved. *Interstate Bankers Corp. v. Kennedy,* D.C.Mun.App., 33 A.2d 165, 166 (1943).

*Affirmed.*

6. The trial judge, Hon. Edward A. Beard, was the moving force in the creation of the Superior Court Art Trust, a collection which includes some excellent examples of American art.