Lawrence S. LEIKEN, Appellant,

v.

Marie N. WILSON and Otmous Wingate, Jr., Appellees.

No. 80–376.

District of Columbia Court of Appeals.

Submitted March 25, 1981.

Decided June 3, 1982.

Lawrence S. Leiken pro se.

No brief was filed by appellees.

Before KELLY and FERREN, Associate Judges, and PAIR, Associate Judge, Retired.

FERREN, Associate Judge:

We granted this appeal from a decision of the Small Claims Branch because it

presents two significant issues that are likely to recur in the administration of small claims as well as elsewhere in the Civil Division: (1) Did the trial court err in vacating a consent judgment (based on a settlement agreement) against appellee Wingate, the driver of an automobile that collided with appellant's parked car? (2) Did the court properly rule that appellees Wingate and Wilson (the car owner) were not liable for negligence since neither of them knew, or reasonably could have known, that the brakes were defective and violated local traffic regulations?

As to the first question, we conclude that the court did err in vacating the judgment because, in finding the settlement agreement unconscionable, the court misinterpreted its terms. Appellee Wingate accordingly is bound to pay appellant $490.

As to the second issue, which as a consequence of our first ruling pertains only to appellee Wilson, we decide as follows: Once appellant proved that appellees' faulty brakes violated traffic regulations enacted to protect against injury from uncontrolled vehicles and proved, further, that this violation proximately caused the damage, appellant thereby presumptively established negligence. Consequently, appellee Wilson (who was not party to the settlement agreement) could avoid liability only if she rebutted this presumption with competent evidence tending to prove that neither she nor Wingate knew, or reasonably could have known, the brakes were defective. We conclude that the trial court's ruling for appel-

lees is consistent with the application of this standard and is supported by the evidence.

 Accordingly, we reverse and remand for reinstatement of the settlement agreement as to Wingate but affirm the judgment in favor of Wilson.[1]

I.

On September 19, 1979, a car driven by appellee Otmous Wingate, Jr. and owned by his fiancee, appellee Marie N. Wilson, collided with a parked car owned by appellant Lawrence S. Leiken. A week later, appellant filed a complaint in the Small Claims Branch seeking damages of $750. *See* D.C. Code 1973, §§ 11–1321, 16–3902. Because Wilson failed to appear for trial on October 9, 1979, the court entered a default against her. *See* D.C.Code 1973, §§ 16–3902(f), –3906(c); Super.Ct.Civ.R. 55(b)(2); Super. Ct.Sm.Cl.R. 2. Appellee Wingate did appear, however, and, with the aid of a law student conciliator, made the following settlement agreement with appellant:

The Clerk of the Court will dismiss this case as settled, pursuant to the following agreement. Plaintiff agrees to amend his complaint to $490.00, representing actual damages of $440.00 and inconvenience of $50.00. Defendant Wingate agrees to pay Plaintiff $90.00 on or before October 29, and $80.00 each month on the 15th beginning in November and until the balance is paid off. If all terms of this agreement are complied with Plaintiff agrees to vacate default judg-

---

1. Appellant argues that the trial court erred in refusing to admit the police report, containing appellee Wingate's admissions, into evidence. Factual observations in a police report may be admissible under the business records exception to the hearsay rule if made and reported in the regular course of business. Super.Ct.Civ.R. 43–I(a); *United States v. Smith*, 172 U.S.App. D.C. 297, 304, 521 F.2d 957, 964 (1975); *cf. Sullivan v. United States*, D.C.App., 404 A.2d 153, 158 (1979) (medical record entries regarding complainant's physical condition admissible under business records exception). Statements of third parties recorded in police reports may be admissible if they fall within another exception to the hearsay rule, such as the exception for admissions. *Id.; see* McCormick's Handbook of the Law of Evidence § 310 (E. Cleary,

2d ed. 1972 & 1978 Supp.). Moreover, because the Small Claims Branch "shall not be bound by" the rules of evidence except for provisions "relating to privileged communications," Super.Ct.Sm.Cl.R. 12(b), the court's rigid ban on the police report was not necessarily required to achieve "substantial justice." *Id.; see Eytan v. Bach*, D.C.App., 374 A.2d 879, 881 (1977) (in the Small Claims Branch, informal procedures govern and "the relevant inquiry is whether 'substantial justice' has been achieved"). In this case, however, we perceive no reversible error from exclusion of the police report, for, with the trial court's help, appellant was able to elicit on examination of appellee Wingate the substance of Wingate's statements to the police, as well as the fact that Wingate was charged with having faulty brakes.

ment against Marie Wilson. Should Defendant miss a payment, Plaintiff will be entitled to a judgment for the remaining balance, plus costs and will be able to act on default judgment against Marie Wilson for damages alleged in the initial complaint.

The trial judge, Dyer Justice Taylor, entered judgment in accordance with the terms of this agreement. *See* D.C.Code 1973, §§ 11–1322, 16–3906(a); Super.Ct. Concil.R. 1–4.

After making two payments, Wingate defaulted. Appellant therefore pursued the matter once again in court, before Judge Bowers, requesting to put on *ex parte* proof of damages. *See* D.C.Code 1973, § 16–3902(f). Appellee Wilson moved to vacate her default. *See* Super.Ct.Civ.R. 55(c); Super.Ct.Sm.Cl.R. 2. At a hearing on April 9, 1980, the court vacated, over objection, the entry of default and granted Wilson a trial on the merits. Also over objection, the trial court on its own motion set aside appellant's settlement agreement with Wingate on the ground it was unconscionable.

After a joint trial later the same day, the court held that appellant had failed to prove negligence and entered judgment in appellees' favor. This court granted appellant's timely application for allowance of

appeal. *See Karath v. Generalis*, D.C.App., 277 A.2d 650, 651 (1971); D.C.Code 1973, § 11-721(c); D.C.App.R. 6.

## II.

Appellant first contends that the trial court erred in declaring unlawful his settlement agreement with Wingate. We agree that the court misconstrued the agreement and thus should not have set aside the judgment.

After vacating Wilson's default and granting her a trial on the merits, the trial court, on its own initiative, "carefully scrutinized the settlement" between appellant and Wingate, who were "not . . . represented by counsel." The court concluded that the agreement was "unconscionable and should not be enforced" because it potentially allowed appellant a double recovery and because it was "confusing and unfair." The court then set the case for trial as to both appellees.

■ If we assume that the Small Claims Branch has the power to set aside a consent judgment[2] on its own motion[3] and that "unfairness" may provide a basis for relief when the parties are not represented by counsel,[4] we must determine whether the

---

**2.** Although the settlement agreement stated that "[t]he Clerk of the Court will *dismiss* this case as settled, pursuant to the following agreement" (emphasis added), the jacket entry reads, "Case settled as to deft. # 2 only per consent praecipe approved and filed herein." Because the court treated the settlement agreement as a consent judgment, we view this case as governed by Super.Ct.Civ.R. 60, concerning relief from judgments, and not by Super.Ct. Civ.R. 41, concerning dismissals. Rule 60(b) applies to consent judgments as well as to judgments entered into after contest. *See* 11 C. Wright & A. Miller, Federal Practice and Procedure § 2852 at 145–46 & n.29 (1973 & 1981 Supp.) (discussing Fed.R.Civ.P. 60(b)) (hereinafter cited as Wright & Miller).

Super.Ct.Civ.R. 60(b), which is identical to Fed.R.Civ.P. 60(b) except for exclusion of inapplicable references to the United States Code, governs relief from judgments and applies in Small Claims Court. *See* Super.Ct.Sm.Cl.R. 2.

**3.** *See Little v. Johnson*, D.C.Mun.App., 145 A.2d 852, 855 & n.6 (1958) (assuming, without deciding, that court can act under Rule 60(b) on

its own motion, the court here acted untimely); *McDowell v. Celebrezze*, 310 F.2d 43, 44 (5th Cir. 1962) (court vacated judgment after hearing on court's own motion); 11 Wright & Miller, *supra* § 2865 at 226 & n.61 ("the court has power to act in the interest of justice in an unusual case in which its attention has been directed to the necessity for relief by means other than a motion"); *cf. Eytan, supra* at 881 (Small Claims Branch properly granted summary judgment on its own motion).

**4.** *Cf. Newman v. Universal Enterprises, Inc.*, D.C.Mun.App., 129 A.2d 696, 700 (1957) (when asked to vacate judgment by confession entered by clerk, court should scrutinize praecipe signed by party not represented by counsel; case remanded to determine whether department store customer entitled to relief under Rule 60(b)); 7 J. Moore, Moore's Federal Practice ¶ 60.22[2], at 252 (2d ed. 1979 & 1980–81 Supp.) (court found ignorance of the law was excusable neglect and constituted grounds to set aside consent judgment); *id.*, ¶ 60.24[5] (fraud, misrepresentation or other misconduct

trial court abused its discretion in setting aside the judgment here. *See Western Union Telegraph Co. v. Dismang*, 106 F.2d 362, 364 (10th Cir. 1939); *cf. Union Storage Co. v. Knight*, D.C.App., 400 A.2d 316, 318 (1979) (per curiam) (review of trial court's refusal to vacate a judgment).

■ Conciliation efforts in the Small Claims Branch are mandatory, and settlements are strongly favored. *Potomac Small Loan Co. v. Myles*, D.C.Mun.App., 34 A.2d 609, 611–12 (1943). *See* D.C.Code 1973, §§ 11–1322, 16–3906(a);[5] Super.Ct. Concil.R. 1–4. The parties entered into their agreement with the aid of a law student conciliator through the statutorily prescribed procedure, and the court approved entry of judgment according to the agreement. Wingate made payments under the agreement and never requested relief from its terms. In view of this Small Claims settlement policy, as well as the fact that the parties found settlement desirable and possible, we put our analysis in perspective by emphasizing the interpretive rule that when a contract is fairly open to two constructions, one of which makes it lawful while the other renders it unlawful, the former should be adopted. *Hobbs v. McLean*, 117 U.S. 567, 576, 6 S.Ct. 870, 874, 29 L.Ed. 940 (1886); *Manning v. Ellicott*, 9 App.D.C. 71, 81 (1896). *Cf. Keystone Fuel Oil Co. v. Del-way Petroleum, Inc.*, 364 A.2d 826, 829 (Del.Super.Ct.1976) (court analyzing Rule 60(b) motion to vacate consent judgment).[6]

The trial court found the agreement "unconscionable" for two reasons:

[1] [I]t potentially allows plaintiff a double recovery. The final line of the praecipe provides that if defendant Wingate misses a payment, plaintiff will be entitled to a judgment in the amount of the remaining balance *and* "will be able to act on default judgment against Marie Wilson for damages alleged in the initial complaint," i.e., $750.00. The Court interprets this to mean that under the terms of the agreement, plaintiff will be able to execute on the judgment against Wilson in the amount of $750.00 and, at the same time, keep what he has collected from Wingate and pursue the judgment for the remaining balance against Wingate . . . .

[2] [T]he penultimate line of the praecipe [is] equally confusing and unfair. Under that provision, if Wingate makes all the payments agreed upon, the result is merely that the default against defendant Wilson would be vacated. Plaintiff's claim against Wilson could then, presumably, be scheduled for trial.

■ Viewing the agreement in its entirety, we conclude that the penultimate provision of the agreement (which the trial court referred to second) is a release or covenant not to proceed against Wilson, unless Wingate fails to observe the agreement.[7] It cannot fairly be construed to

---

is grounds for relief); *id.*, ¶ 60.27[2] at 358, 364–65 (any other reason for granting relief under Rule 60(b)(6) may include judicial mistakes or mistakes made by pro se litigants); 11 Wright & Miller, *supra* § 2858 at 163 & n.95 (relief granted under R. 60(b) because of mistakes or excusable neglect by party not represented by counsel); *id.* at 166–67 & n.3 (reopened consent judgments because of erroneous factual representations); *id.*, § 2860 (relief granted for fraud, misrepresentation or other misconduct by adverse party); *id.*, § 2864 (vacated judgment for other reasons justifying relief).

5. These sections are identical in the 1981 Code. *See* D.C.Code 1981, §§ 11–1322, 16–3906(a).

6. In *Keystone Fuel Oil Co., supra* at 829, the court stated:

A consent judgment is basically an agreement which the Court turns into a judgment. It is similar to a contract between the parties. This means that the Court should not allow a party to free himself from the judgment unless there is some theory in operation which would free him from the contract. [Citations omitted.]

7. *In this jurisdiction, the court must focus on the intent of the parties in order to determine whether a settlement operates to limit liability of only those who were party to the agreement or also limits liability of other joint tortfeasors. McKenna v. Austin*, 77 U.S.App.D.C. 228, 233–34, 134 F.2d 659, 664–65 (1943); *see Hodges v. United States Fidelity and Guarantee Co.*, D.C. Mun.App., 91 A.2d 473, 476 (1952) (court focused on intent in applying Maryland statute on liability of joint tortfeasors); W. Prosser,

mean that once Wingate fulfills his bargain, appellant is free to seek a second recovery against Wilson, subject only to trial in lieu of default. The trial court's interpretation is erroneous as a matter of law.[8]

The final provision of the agreement (which the trial court referred to first) states: "Should Defendant miss a payment, Plaintiff will be entitled to a judgment for the remaining balance, plus costs and will be able to act on default judgment against Marie Wilson for damages alleged in the initial complaint." The trial court interpreted this provision to mean that if Wingate fails to pay, appellant can keep all sums paid by Wingate, proceed against him for the balance due on the agreed $490, and, at the same time, obtain the full judgment of $750 against Wilson. According to this reading, Wingate could collect more than the $750 in damages he alleged in his initial complaint.

Although the language of the agreement is literally consistent with the trial court's construction, such a result would be inconsistent with general principles of tort law. If two or more tortfeasors produce a single injury, the plaintiff may sue each one for the full amount of the damage and hold the defendants severally liable; but the plaintiff can obtain only a single recovery, and each defendant will be entitled to a credit for any sum that the plaintiff has collected from the other defendant. *McKenna v. Austin*, 77 U.S.App. D.C. 228, 233, 134 F.2d 659, 664 (1943); W. Prosser, Handbook of the Law of Torts § 49 (4th ed. 1971). It is unlikely that appellant and Wingate intended an agreement in derogation of these established principles.

There is another, more plausible interpretation of the final provision: If Wingate misses a payment under the agreement, appellant may keep all the payments Wingate has made, proceed against Wingate for the balance of the $490 he promised (plus costs), and proceed against Wilson (apropos of *McKenna, supra*) for the difference between the amount collected from Wingate and the $750 alleged in the complaint. So construed, the agreement would reflect an understanding that the driver of the car, Wingate, promised to pay $490 according to a fixed schedule in return for (1) appellant's willingness to forego suit for the additional $360 of alleged damages and (2) his promise to vacate the default against Wingate's fiancee, appellee Wilson. Thus, if Wingate failed to meet the payment schedule, appellant could try to collect the full $750 of alleged damages: up to $490 from Wingate without litigation over liability and, upon proof of damages, up to $750 from Wilson

Handbook of the Law of Torts § 49 at 304 & n.26 (4th ed. 1971) (approving the "excellent opinion of Rutledge, J. in *McKenna* [*supra*] ...."). For purposes of interpretation, it is immaterial whether the agreement is called a release or a covenant not to sue. *McKenna, supra* 77 U.S.App.D.C. at 230, 234, 134 F.2d at 661, 665. Here, Wingate's intent to limit Wilson's liability is clear on the face of the document.

8. Although it would appear that the court's interpretation is erroneous solely on the basis of the language used by the parties, we also note that the court's view is contrary to all evidence on party intent introduced at trial. At trial, Wingate stated: "I thought that once I paid [the settlement] ... all charges [would have been] dropped." Leiken followed, stating that they "would have been." At the hearing on Wilson's motion to vacate, appellant stated: "It was my intention that if [Wingate] paid within the dates specified that any claim for damages against her would be dropped...."

Additionally, we note that at the October 9, 1979 hearing during which the parties entered into the consent judgment, appellant and Judge Taylor engaged in the following interchange:

LEIKEN: I do have a default judgment in effect, I understand, against Miss Wilson in settling this matter. Basically I agreed, as I understand it, that if the payment schedule is met that that judgment against Miss Wilson, the owner of the car, will be vacated.

COURT: Correct.

LEIKEN: However, this agreement specifies that that judgment may still [] have effect in the event that the payment schedule is not met.

COURT: That's correct. That's what it says here.

LEIKEN: Thank you.

COURT: You're quite correct to try to get your understanding clarified ... on the record....

These discussions accord with our interpretation of the agreement.

(provided that appellant collects no more than a total of $750 and the defendants may seek contribution, as appropriate).[9]

 This latter construction of the settlement agreement is more consistent with the parties' intentions and with law, whereas the trial court's interpretation would make it unconscionable (if not automatically unlawful under *McKenna, supra* ). We hold, accordingly, that the trial court erred as a matter of law, and that the settlement agreement—to be interpreted as we summarized it above—must be reinstated.[10]

### III.

Because Wingate missed a payment under the settlement agreement, appellant proceeded against Wilson, seeking to put on *ex parte* proof of damages. Although we order reinstatement of Wingate's settlement obligation, we cannot overlook the fact that Wingate committed a breach of the agreement, which, by its terms, justified appellant in pursuing Wilson once again.

A. The first question is whether the trial court abused its discretion in vacating Wilson's default. "To be entitled to relief, the defaulting party must show that there is 'good cause' for setting aside the default. Super.Ct.Civ.R. 55(c)," *Firestone v. Harris*, D.C.App., 414 A.2d 526, 528 (1980).[11] In its Statement of Proceedings and Evidence

pursuant to [D.C.App.] Rule 6(d)(3), the court stated its reasons as follows:

Defendant Wilson testified that she did not appear in court on the answer date because she was still suffering from injuries resulting from the accident, including a concussion and multiple lacerations, and because she was pregnant. Defendant Wingate, Wilson's fiance, testified that he called plaintiff before the answer date and stated that she could not appear in court. Plaintiff could not recall this aspect of his conversation with Wingate but did recall speaking with him. The Cour⁺ credited the testimony of the defendants and vacated the default.

"A motion to set aside entry of default is ... delegated to the discretion of the trial court." *Firestone, supra* at 528 (citation omitted). Indeed, "[t]he power of the trial judge under ... Rule 55(c) to set aside entry of default at any time prior to judgment is restricted only by the requirements that it be exercised within a reasonable time and for good cause shown in the light of the circumstances of each case." *Lancaster v. Canuel*, D.C.App., 193 A.2d 555, 557 (1963). *See also Wheeley v. Smith*, D.C.Mun.App., 160 A.2d 103, 106 (1960) ("reasonable time ... conceivably could be longer than the time allowed under Rule 60(b)"). This follows from the fact that the trial judge is in the "best position to evaluate the immediate circumstances of the case

---

**9.** *See* interchange between appellant Leiken and Judge Taylor at note 8 *supra*.

**10.** It is irrelevant to the validity of the settlement agreement whether Leiken would prevail at trial. As long as a claim is not so manifestly unreasonable that a party could not assert it in good faith, forbearance to press a claim is sufficient consideration to support a settlement. *Bullard v. Curry-Cloonan*, D.C.App., 367 A.2d 127, 131 (1976); *Rommel v. West American Insurance Co.*, D.C.Mun.App., 158 A.2d 683, 685 (1960). Accordingly, "a valid settlement agreement, once reached, cannot be repudiated by the parties, and ... the actual merits of the settled controversy are without consequence." *Autera v. Robinson*, 136 U.S.App.D.C. 216, 220 n.17, 419 F.2d 1197, 1201 n.17 (1969).

**11.** Super.Ct.Civ.R. 55(c) provides:
For good cause shown, and upon the filing of a verified answer setting up a defense suffi-

cient if proved to bar the claim in whole or in part, the Court may set aside an entry of default....

Rule 55 is applicable in the Small Claims Branch except where it is inconsistent with the expeditious and informal nature of small claims proceedings. *See* Super.Ct.Sm.Cl.R. 2. The requirement that appellee file a verified written answer is not always consistent with the nature of small claims proceedings and, in the exercise of reasonable trial court discretion, need not always be applied. *Cf. Franklin Investment Co. v. Boyd*, D.C.App., 201 A.2d 871, 872–73 (1964) (trial court granted defense motion to vacate default judgment and permitted defendant to file answer thereafter; because of incomplete record, this court did not review applicability of rule requiring motion to vacate to be accompanied by verified answer).

and the credibility of the parties." *Firestone, supra* at 528 (citation omitted).

▉▉▉ Wilson stated she failed to contact the court to confirm that she would be unable to appear as scheduled because she knew Wingate was coming to court. She did not explain, however, why she had waited almost five months before seeking to vacate the default. We cannot say it was unreasonable for the court to conclude that, given Wilson's injuries, she justifiably relied on Wingate to work matters out with appellant. Moreover, given Wingate's settlement with appellant, who thereby agreed not to pursue Wilson as long as Wingate kept up the agreed-upon payments, it is understandable why Wilson relaxed rather than taking the initiative to cure her default. Finally, we conclude that the trial court, in a small claims proceeding, has discretion to grant a motion to vacate a default without requiring simultaneous filing of a verified answer, particularly where, as here, the court decided to hold a trial on the merits on the same day it granted the motion to vacate. *See* note 11 *supra.* We are satisfied that, in the trial court's reasonable discretion, the proffer of a defense on the merits can await the trial.

▉▉▉ "It is the policy of the law to have every case tried on its merits. When satisfied of the good faith of the applicant moving to set aside a default, the court should be liberal in its consideration of the application." *Manos v. Fickenscher,* D.C.Mun. App., 62 A.2d 791, 793 (1948) (citations omitted). Here, in addition to the reasons the court found to excuse Wilson's failure to appear and her subsequent delay, the trial court set aside the default "so everyone gets a day in court." We cannot say, on this record, that the trial court abused its discretion in vacating Wilson's default.

**12.** The court noted but did not reach the question of the effect of the traffic regulation on determination of negligence in *Chavis v. Commercial Storage, Inc.,* D.C.App., 324 A.2d 695, 698 n.4 (1974).

**13.** Appellant, acting *pro se,* stated in his Application for Allowance of Appeal that appellees

B. We must, therefore, address the merits: whether the court properly resolved the question of negligence. In making this assessment, we confront this question: in a brake failure case, reflecting a violation of the traffic regulations, is the defendant automatically negligent as a matter of law, or can exonerating circumstances preclude a finding of negligence? [12]

▉▉▉ We conclude that a defendant's failure to comply with traffic regulations creates a presumption of negligence.[13] To rebut this presumption, the defendant must produce sufficient competent evidence to justify a finding that the defendant did all a reasonable person who wished to comply with the law would do. Here, the trial court found that Wilson's brakes were defective and that this failure caused the accident. The court also found, however, that neither "defendant knew or reasonably could have foreseen that the brakes were faulty." This finding is supported by the evidence. The trial court reported in its Statement of Proceedings and Evidence Pursuant to [D.C.App.] Rule 6(d)(3):

> Wingate testified that the car, a 1966 Dodge, had been inspected three to five days prior to that accident and had passed. The brakes worked properly between the time of inspection and the accident when Wingate drove it back and forth to work. After the collision, Wingate took the car to a mechanic to determine why the brakes failed and was informed that a rubber hose in the brake system was broken. Wilson was also called as an adverse witness and corroborated Wingate's testimony that the car passed inspection and that the brakes worked properly until the accident. She specifically remembered the brake tests being performed at the inspection which she attended.

"admitted that they were ticketed by the D. C. police for faulty brakes" and that it was "error in a case like this to require plaintiff to prove recklessness or gross negligence." As to the claimed error, the trial court placed on appellant the burden of proving negligence, not gross negligence let alone recklessness.

The trial court—as factfinder here—properly could conclude, on the basis of this testimony, that appellee rebutted the presumption of negligence. We affirm the judgment in Wilson's favor.

■ 1. This court has stated that violation of a traffic regulation usually constitutes negligence as a matter of law. *Stevens v. Hall*, D.C.App., 391 A.2d 792, 796 n.2 (1978) (citing *Herrell v. Pimsler*, 307 F.Supp. 1166, 1168 (D.D.C.1969)).[14] We have cautioned, however, that this per se rule is limited "to situations in which the violation of a statute or regulation has frustrated its protective purpose. 'Violation of a regulation does not, *ipso facto*, give rise to civil liability unless the regulation is one designed to prevent the sort of harm to the individual relying on it which has in fact occurred.'" *Stevens, supra* at 795 (quoting *Peigh v. Baltimore & O. R. Co.*, 92 U.S.App. D.C. 198, 200, 204 F.2d 391, 393 (1953)). Furthermore, a traffic violation cannot give rise to liability unless it is the proximate cause of the injury. *Bauman v. Sragow*, D.C.App., 308 A.2d 243, 244 (1973) (per curiam).[15]

In this case all three conditions are met. Appellees violated two traffic regulations governing brakes,[16] the "protective pur-

pose" clearly is to forestall personal injury or property damage from uncontrolled vehicles, and the trial court found "the cause of the accident was the failure of the brakes."[17] The question, then, is whether the court nonetheless can permit appellees to introduce evidence tending to excuse the violation.

2. In the case of a traffic violation that causes injury within the protective scope of the regulation, we have two choices in applying negligence per se theory: imposition of automatic liability, or creation of presumptive liability subject to rebuttal with a number of acceptable excuses. This court has chosen the latter course. Recently, we stated:

> If a party charged with statutory or regulatory negligence produces competent evidence tending to explain or excuse his or her violation of the statutory or regulatory standard, the jury is properly instructed, upon proper request of the party, that the violation is evidence of negligence, but not negligence as a matter of law. [*Ceco Corp. v. Coleman*, D.C.App., 441 A.2d 940, 945 (1982).]

■ The question whether a defendant has produced "competent evidence tending

---

14. *See Rogers v. Cox*, D.C.App., 75 A.2d 776, 778 (1950) (citation omitted) (violation of regulation concerning left turns is negligence per se); *Eclov v. Dalton*, D.C.Mun.App., 38 A.2d 661, 662 (1944) (plaintiff found contributorily negligent as a matter of law for driving on the opposite side of the platform from the side indicated by a traffic sign); *Ross v. Hartman*, 78 U.S.App.D.C. 217, 218, 139 F.2d 14, 15 (1943), *cert. denied*, 321 U.S. 790, 64 S.Ct. 790, 88 L.Ed. 1080 (1944) (leaving unlocked car unattended, in contravention of statute, constituted negligence per se and subjected car owner to liability for injuries caused by person who stole car).

15. *See Abel v. First Security Insurance Co.*, D.C.Mun.App., 120 A.2d 586, 587 (1956) (violation of traffic regulations constitutes negligence per se but plaintiff must prove there was a causal connection between violation and the injury to impose liability on defendant); *Richardson v. Gregory*, 108 U.S.App.D.C. 263, 265–66, 281 F.2d 626, 628–29 (1960) (same); *Danzansky v. Zimbolist*, 70 App.D.C. 234, 236, 105 F.2d 457, 459 (1939) (court upholds jury instruction that a violation of traffic regulations constitutes negligence and mandates imposi-

tion of liability if the violation was the proximate cause of the injury).

16. Regulation 32 DCRR § 6.301(a) provides in relevant part: "Every ... [motor] vehicle ... shall be equipped with service brakes complying with the performance requirements of this section and adequate to control the movement of and to stop and hold such vehicle under all conditions of loadings, and on any grade incident to its operation" (repromulgated as 18 DCMR § 720.2 (effective August 20, 1981)). Regulation 32 DCRR § 6.301(1) provides: *"All brakes shall be maintained in good working order ... "* (emphasis in original) (repromulgated as 18 DCMR § 720.11 (effective August 20, 1981) (emphasis deleted)).

17. Wingate testified that he pushed the brake pedal "to the floor" and the brakes did not hold. Wingate admitted at trial that he was charged with faulty brakes and appeared before the Corporation Counsel on this charge. The outcome of this determination, however, was not disclosed.

to explain or excuse" a regulatory violation is obviously a contextual one. We deal here only with failing brakes, but we are emphatic in our belief that violation of a traffic regulation governing automobile brakes should not easily be converted from negligence per se to mere evidence of negligence. The phrase "competent evidence tending to explain or excuse" brake failure accordingly means that once the jury has found there was a traffic violation, negligence is established unless the jury also finds that the violator has produced evidence demonstrating that he or she did everything a reasonably prudent person would have done to comply with all applicable regulations:

> A defendant's failure to comply with [traffic] provisions gives rise to a presumption of negligence that he may rebut by proof "that he did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law." (*Alarid v. Vanier* (1958) 50 Cal.2d 617, 624, 327 P.2d 897, 900 ....) [*Maloney v. Rath*, 69 Cal.2d 442, 444, 71 Cal. Rptr. 897, 898, 445 P.2d 513, 514 (1968) (Traynor, J.) (en banc) ][18]

*See McConnell v. Herron*, 240 Or. 486, 491–92, 402 P.2d 726, 729 (1965) (en banc); *Albers v. Ottenbacher*, 79 S.D. 637, 641–42, 116 N.W.2d 529, 531 (1962). We adopt this "presumption of negligence" formulation for two reasons: it states more precisely the evidentiary burden on a violator that appears to be inherent in the "producing competent evidence" standard, and it reflects this court's traditional view that a defendant should be held accountable for injuries proximately caused by faulty brakes, absent proof that the defendant did not know—and should not reasonably have been expected to know—about the defect. *District of Columbia v. Tilgham*, D.C.Mun. App., 157 A.2d 629, 632 (1960); *Ravin v.*

*Hanson*, D.C.Mun.App., 142 A.2d 830, 832 (1958); *cf. Andrews v. Forness*, D.C.App., 272 A.2d 672, 673 (1971) (res ipsa loquitur doctrine applied in brake failure case). *See generally* Restatement (Second) of Torts § 288A (1965) (Excused Violations).

3. Here, the trial court did not explicitly mention the violation of the traffic regulations in its findings, but it did engage in extensive sua sponte questioning of Wingate and Wilson concerning their maintenance of the automobile brakes. The court found that neither of them "knew or reasonably could have foreseen that the brakes were faulty." This finding is adequate to rebut the presumption that appellees were negligent.

### IV.

The judgment vacating appellant Leiken's settlement agreement with appellee Wingate is reversed and the case is remanded with instructions to reinstate the consent judgment incorporating that agreement. The judgment in favor of appellee Wilson is affirmed.

*So ordered.*

KELLY, Associate Judge, concurring in part and dissenting in part:

I agree that it was clear error to set aside the settlement agreement between appellant Leiken and appellee Wingate. And while I do not necessarily disagree with the majority's discussion of the negligence issue, I deem it superfluous since in my view it was an abuse of discretion to vacate the default against appellee Wilson. She did not contest liability in the motion. Her complaint was that she did not owe the full amount claimed. I would reverse the judgment as to both appellees.

---

18. *Maloney, supra*, concerned a failure to comply with traffic rules that were similar to those applicable here. Section 26300 of the California Vehicle Code "provided that every motor vehicle 'shall be equipped with brakes adequate to control the movement of the vehicle and to

stop and hold the vehicle,' and section 26453 provided that all 'brakes and component parts thereof shall be maintained ... in good working order.'" *Id.* at 444, 71 Cal.Rptr. at 898, 445 P.2d at 514.